ADRIENNE MICHAUD

*vs.*

INHABITANTS OF ST. FRANCIS.

Aroostook.     Opinion Sept. 4, 1928.

256

A. J. Nadeau,
A. S. Crawford, Jr., for plaintiff.
Dana L. Theriault,
Herbert T. Powers, for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, BARNES, PATTANGALL, JJ.

PATTANGALL, J. On report. Assumpsit to recover for services as teacher in the public schools during the school year of 1926-1927. It is agreed that the services sued for were satisfactorily performed and that the amount charged is reasonable.

Two questions are presented. (1) Was there a valid express contract made between plaintiff and defendant, under the terms of which plaintiff was employed to render the services charged for? (2) If not, may she recover therefor on a quantum meruit?

The evidence establishes the following facts. Defendant, with adjacent municipalities, constituted a school union under the provisions of Sections 55-62, Chapter 16, R.S. 1916. Catherine Ouellette was Superintendent of Schools of this union and acted as secretary of the local committee.

On June 5th, 1926, a meeting of the school committee of de-

fendant Plantation was held, at which Miss Ouellette was present. At this meeting certain changes were suggested relative to the teaching force for the succeeding year. The plaintiff was then, and had been during the previous year, employed in teaching a school known as the Nadeau School and a Miss Daigle had been employed in the school known as the Jones School. No change in these respects was suggested at this meeting.

At a meeting held on June 17th, it was urged by two members of the committee that plaintiff should be given the Jones School and Miss Daigle the Nadeau School. Miss Ouellette objected to the change, but at the close of the meeting agreed that the change might be made if plaintiff desired it. About two weeks later, a second meeting of the school committee occurred. Prior to that time one of the committee had resigned and at this meeting the vacancy was filled by the election of a new member who did not attend the meeting. Meanwhile, Miss Ouellette had talked the matter over with plaintiff, telling her that the committee desired that plaintiff should take the Jones School but that she preferred that plaintiff should remain where she was, which plaintiff agreed to do. Miss Ouellette had already employed Miss Daigle to continue teaching in the Jones School and so informed the committee at the second meeting. She also informed them that she had employed the plaintiff to teach the Nadeau School for another year.

Some time in July, the two members of the committee who had decided to bring about the change saw plaintiff and informed her that they wished her to teach the Jones School and that if she did not accept that position she would not be allowed to teach in town.

At a meeting held on July 22nd, attended by the entire committee and Miss Ouellette, Miss Ouellette was again urged to nominate the plaintiff as teacher for the Jones School but refused to do so.

On August 23rd, the date fixed for beginning the fall term, Miss Daigle went to the Jones School prepared to commence work, but was prevented from teaching by the two members of the committee heretofore referred to, and plaintiff was instructed by these members of the committee to take charge of the Jones School, being told that they would see that she was paid for her services. Plaintiff understood that this arrangement was in opposition to Miss Ouellette's plans, and soon after she began teaching was advised

258

by Miss Ouellette, by letter, that she had not been nominated by the Superintendent as a teacher for the Jones School. She continued, however, to carry on the work of the school and did carry on that work satisfactorily and without interruption during the entire school year. Miss Ouellette continued as Superintendent of Schools during all of that period, and nothing further was done by her with regard to plaintiff's employment.

The selection and employment of teachers in the public schools is governed by Section 7, Chapter 188, P. L. 1917, which provides that the Superintendent "shall nominate all teachers - - - - and upon approval of nominations by said committee may employ teachers so nominated and approved."

Section 38, Chapter 16, R. S. 1916, authorizes the superintending school committee, after due notice and investigation, to dismiss any teacher who proves unfit to teach or whose services they deem unprofitable to the school, but nowhere is there authority for the employment of a teacher by the committee nor is the Superintendent authorized to employ a teacher without the approval of the committee.

To constitute a legal employment, there must then be a nomination by the Superintendent, an approval of the nomination by the committee, and an employment by the Superintendent of the teacher so nominated and approved. It is not to be expected that boards of this kind act with great formality nor that their records are as full and explicit as those of a legislative body or of a court; and it undoubtedly often happens that the selection of teachers is made after a general discussion between the committee and the Superintendent in which all reach an agreement without a formal nomination having been made by the Superintendent and without a formal approval having been registered by the committee.

There is conflicting evidence as to just what occurred concerning nomination of plaintiff by the Superintendent and approval of her nomination by the committee. The Superintendent's conduct was not entirely ingenuous and the committee appear to have been insistent upon dictating the course which the Superintendent should follow, to the extent, at least, of encroaching upon her prerogatives, but we do not need to consider too minutely the details of that controversy.

After nomination and approval there still remains an important act to be performed. The teacher must be "employed." And the duty of employing teachers rests upon the Superintendent and upon no one else. The school committee has no authority to employ a teacher. It may, by refusing to approve a nomination, exercise a veto power over the employment of one or more of those who are nominated. It may, undoubtedly, approve a nomination conditionally and thereby exercise a large measure of control in designating the particular school in which a teacher shall be employed, or any other detail of employment which strictly speaking would not be within its jurisdiction. It may, as has been stated, under certain conditions, discharge a teacher. It may, indeed, discharge a Superintendent. Sec. 2, Chap. 188, P. L. 1917. But it may not employ teachers.

There is no dispute in the present case as to the employment of plaintiff. She was not employed by the Superintendent. She was employed by the committee.

This unauthorized action does not bind defendant. No valid express contract exists between plaintiff and defendant under the terms of which she can maintain her suit.

Nor can she recover on a quantum meruit. True she rendered the service for which she asks compensation and the price charged for the service is reasonable but "persons acting under the employment of town or city officers must take notice at their peril of the extent of the authority of such officers," *Goodrich* v. *Waterville*, 88 Me., 41; *Morse* v. *Montville*, 115 Me., 454; *Power Co.* v. *Van Buren*, 116 Me., 125; *Bangor* v. *Ridley*, 117 Me., 300. And employment by those acting without legal authority creates no liability on the part of the municipality.

The case indicates that plaintiff relied implicitly on the promise of the two members of the committee who employed her, that "they would see that she would be paid," giving no thought and making no investigation as to their authority to bind defendant.

Whether they are individually liable to her because of that promise is a matter not involved in the present case. In any event defendant is not liable.

*Judgment for defendant.*