CLAIR F. BENSON

*vs.*

THE INHABITANTS OF THE TOWN OF NEWFIELD.

York. Opinion, August 17, 1938.

24

*Lincoln Spencer,*
*Joseph R. Paquin,* for plaintiff.
*Willard & Willard,* for defendants.

Sitting: Dunn, C. J., Sturgis, Barnes, Thaxter, Hudson, Manser, JJ.

Hudson, J. Action in assumpsit to recover damages for alleged breach of contract. It comes up on defendants' exceptions to the acceptance of the Referee's report.

Facts found by him are: that the plaintiff, without formal employment, acted as principal of the defendants' high school during the school year of 1935–1936; that on April 29, 1936, at a school board meeting attended by all of its three members as well as by the superintendent of schools, he was reelected for the ensuing school year of 1936–1937 at a salary of $1020; that thereat the superintendent did not formally nominate him nor thereafter formally employ him as principal; that he taught until the Christmas vacation with the knowledge and acquiescence of the superintendent, during which time he received his salary check regularly from the treasurer of the defendant town; that he received a letter from the superintendent dated December 28, 1936, stating that the committee had decided to ask him to resign, to which he replied verbally he would not; that one of the members of the school committee told him that he was entitled to a hearing if he so desired, to which he made no answer; that on January 5, 1937, at a meeting attended by two members of the committee and the superintendent, the committee voted to dismiss him; that there were no written charges preferred against him nor evidence heard at the meeting, of which he received no notice; and finally, that the plaintiff, being ready and willing to continue to teach, diligently attempted to obtain employment and failed, anyway to the extent of netting anything above the cost of search.

On these facts the Referee found a valid contract; the dismissal illegal; it being illegal, the contract breached; and recommended judgment for the plaintiff.

The defendants offered evidence tending to show that the contract of employment for the year 1936–1937 was conditional, which was excluded by the Referee.

As drawn, the declaration contained two counts, the first alleging that the contract of employment was made by the defendant

town by its school committee, and the second, by its servants and agents. The second count was abandoned.

The defendants objected first to the finding that the plaintiff acted as principal of the high school during the school year of 1935–1936 and to the Referee's statement that there was no evidence of a formal employment of him during that year and that the occupancy of the position by him was acquiesced in by all the officers of defendants. Whether justified or not, the defendants were not prejudiced by this finding and statement. Their counsel frankly states in his brief: "The question of employment during the year 1935–1936 is not material to the case, . . . ."

Other objections present in different form the general question whether, under the facts as found by the Referee, there was a legal employment of the plaintiff for the school year of 1936–1937.

As permitted under Chapter 19, R. S. 1930, the defendant town had combined with other towns and formed a school union. In Section 70 of said chapter, under subdivision (e), as amended by Chapter 9, P. L. 1935, it is provided that the superintendent of schools ". . . shall nominate all teachers subject to such regulations governing salaries and the qualifications of teachers as the superintending school committee shall make, and upon the approval of nominations by said committee he may employ teachers so nominated and approved."

The question is whether the election of a teacher by the school committee, his teaching thereunder, receiving from the superintendent of schools instructions as to his duties, payment of his salary regularly by the town, and his receipt of a letter from the superintendent asking for his resignation as high-school principal, constitute such facts as justified in law the conclusion of the Referee that a valid contract was entered into between the parties.

In order for the plaintiff to prevail, it was incumbent upon him to establish three things, namely: the making of a valid contract, its breach and damages. As to damages no question is raised.

Was there a valid contract? No agency for the promotion of the state's best interests and general welfare is of greater importance than the schools of the state. The education of its youth is paramount. It is highly essential that those who instruct our boys and girls in the plastic period of their lives be men and women of

character as well as possessed of educational qualifications. With this in mind, the legislature very properly saw fit to regulate the employment of teachers not only in the interest of the public but as well in that of the teachers themselves. So it provided that the actual employment should be preceded by an election of a nominee for the position. This gives an opportunity for a painstaking consideration of the proposed teacher's worthiness and qualifications. It places responsibility directly upon the members of the school committee and the superintendent of schools, each performing his statutory duty to the end that he who is best fitted be chosen.

The statute above mentioned, to wit: Subsection (e) of Section 70, Chapter 19, R. S. 1930, has been dealt with recently in *Michaud v. St. Francis,* 127 Me., 255, 143 A., 56, and there it was held that to constitute a legal employment of a teacher in a school union, there must be a nomination by the superintendent, an approval of the nomination by the committee, and an employment by the superintendent of the teacher so nominated and approved. The school committee has no authority to employ a teacher.

The defendants rely largely upon the Michaud case for their defense, for here they claim there was neither a nomination nor an employment by the superintendent. It is to be observed that a distinction obtains in the Michaud case, for therein the superintendent not only did not nominate the teacher, but actively opposed her employment.

True it is that the Referee herein found that there was no formal nomination nor formal employment by the superintendent, but, nevertheless, he found enough in the facts, as he thought, to justify him in determining that there was a valid contract of employment.

Facts found in reference under Rule of Court are final when supported by any evidence. *Brunswick Coal & Lumber Co.* v. *Grows,* 134 Me., 293, 186 A., 705; *Staples* v. *Littlefield,* 132 Me., 91, 167 A., 171; *Hawkins* v. *Maine and New Hampshire Theaters Co.,* 132 Me., 1, 164 A., 628; *Kliman* v. *Dubuc,* 134 Me., 112, 182 A., 160; *The United Company and Fay & Scott* v. *Grinnell Canning Co.,* 134 Me., 118, 182 A., 415; *Richardson* v. *Lalumiere,* 134 Me., 224, 184 A., 392. From proven facts proper inferences may be drawn as a basis for determination of legal issues.

What, then, did this Referee have on which to justify his finding

that there was a valid contract? The plaintiff had taught this school the preceding year. Nearly at its close, the committee met with full attendance and the superintendent likewise was present. A brief record of that meeting was made and is in the case. In it appears this:

"Teachers reelected as follows:

Prin. high Clair F. Benson $1020"

This record is signed by the superintendent of schools. The Referee, it would seem, from it alone could properly infer that, at this meeting attended by all who had authority as to the election and employment of a teacher, the services he had already rendered, his character, his qualifications, his fitness for the position, his salary, and his employment for the ensuing year were all discussed and given consideration.

The record didn't state (and it wasn't necessary that it should) that the superintendent actually nominated Mr. Benson as principal. As said in *Michaud* v. *St. Francis,* supra, on page 258, 143 A., on page 57:

"It is not to be expected that boards of this kind act with great formality nor that their records are as full and explicit as those of a legislative body or of a court; and it undoubtedly often happens that the selection of teachers is made after a general discussion between the committee and the Superintendent in which all reach an agreement without a formal nomination having been made by the Superintendent and without a formal approval having been registered by the committee."

While he could not be legally elected unless nominated by the superintendent, because the statute so provides, yet in the absence of any evidence to the contrary, the Referee had a right to rely upon the presumption that that required by law to be done was done. The superintendent of schools was a public officer and his acts in that capacity, so long as in line with the performance of his official duties, are presumed to have been done in accordance with law, for every person holding office or trust is presumed to perform his duties without its violation. *The Inhabitants of Augusta* v. *The In-*

habitants of Vienna, 21 Me., 298, 303; Treat v. Inhabitants of Orono, 26 Me., 217, 219; Inhabitants of New Portland v. Inhabitants of Kingfield, 55 Me., 172, 178; Snow v. Weeks, 75 Me., 105, 107; The Inhabitants of Bucksport v. Spofford, 12 Me., 487, 491; Cutting v. Harrington, 104 Me., 96, 101, 71 A., 374; Abbott v. City of Rockland, 105 Me., 147, 149, 73 A., 865.

"For the purpose of upholding proceedings, ut res magis valeat, quam pereat, many deficiencies, not inconsistent with what does appear, are supplied by presumption and intendment of law." Inhabitants of Bucksport v. Spofford, supra.

In Treat v. Inhabitants of Orono, supra, the court, speaking of a surveyor of highways, said:

"The law presumes, that official persons conduct legally and perform their duties, until proof is made to the contrary."

In Massachusetts Breweries Company v. Morris Herman, 106 Me., 524, 76 A., 943, it is held that, in the absence of proof to the contrary, a replevying officer is presumed to have taken the bond required by statute.

This Court has held recently that the law assumes that government officers do their duty. Perry v. Park Street Motor Corporation, 127 Me., 365, 143 A., 274. Also see Inhabitants of Wellington v. Inhabitants of Corinna, 104 Me., 252, 71 A., 889; Bishop v. Inhabitants of the Town of Hermon, 111 Me., 58, 88 A., 86.

"There is always a presumption that official acts or duties have been properly performed, and in general it is to be presumed that everything done by an officer in connection with the performance of an official act in the line of his duty was legally done, whether prior to the act, such as giving notice, or determining the existence of conditions prescribed as a prerequisite to legal action, or subsequent to such act." 22 C. J., Section 69, page 130, et seq.

In applying the principle of presumption to the acts of a county superintendent of schools, the court, in Board of Education of City of Emporia et al. v. Shepherd et al., 135 Pacific Reporter (Kansas), 605, said:

". . . a departure from duty must be shown by the party seeking redress."

·Still it is only a presumption and may be rebutted by the introduction of evidence. Here there was none.

The next question is whether the plaintiff, having been nominated by the superintendent, was employed by him. Here again the Referee found that there was no formal employment but there were very strong facts from which he could have an actual employment. The superintendent himself gave specific directions to the teacher as to the performance of his duties. Furthermore, in performance of his duty under the statute (see Subdivisions [b] and [d] of Section 70, Chapter 19, R. S. 1930), he supervised the disbursement of school appropriations, including the payment of teachers, and this plaintiff, for a portion of the school year—approximately half of it—received his monthly salary, avouched by this superintendent. As said in *Inhabitants of Town of Farmington* v. *Miner*, 133 Me., 162, 175 A., 219 (where it was claimed that the municipal officers, having drawn orders for payment of the rent, did not know of the hiring of an office for the superintendent of schools and that they never formally approved it). ". . . It must be inferred that they had full knowledge of what was being done and acquiesced in it," so here from facts proven it was entirely proper to draw the inference of employment.

Moreover, the superintendent by letter invited him to resign. But from what if not the principalship? After legal election of the plaintiff, it was the duty of the superintendent to employ the one elected and the presumption obtained that he performed his duty as required by law. The presumption here is strengthened by the fact that the superintendent, available as a witness, was not put on the stand to testify that this teacher was not employed by him. Strong facts were these from which the Referee could find both the nomination and employment by the superintendent.

The contract established, was it broken? His dismissal was in writing and is not denied. While only the superintendent could employ the teacher, the power of dismissal was vested alone in the committee, but only upon due notice and investigation, and then he could be lawfully dismissed only for proven unfitness or for services

it deemed unprofitable to the school. Chapter 19, Section 44, Par. III, R. S. 1930. As already said, the plaintiff received no notice whatever of the date of the meeting at which he was dismissed; no written·charges were preferred against him; he was neither present nor represented by counsel; and so far as we have knowledge, no evidence was produced. The Referee could well find as he did, that the committee did not comply with the statute. In *Hopkins* v. *Inhabitants of Bucksport*, 119 Me., 437, 111 A., 734, the court said on page 440, 111 A., on page 735:

"The authority given to the committee, to vacate a contract, being an authority given to those who' represent one party only, must be strictly pursued according to the provisions of the statute, to have that effect."

The fact that the plaintiff remained silent when told by one of the committee that he was entitled to a hearing constitutes neither an estoppel nor waiver. The legislature had provided the method of dismissal of teachers, a matter of general concern to the public. At such a meeting, it had a right to be heard as well as the teacher. The teacher, except by resignation, could not relieve the school committee from the full performance of its statutory duty.

"Where the object of a law is the good of the public as well as of the individual, such protection to the state cannot, at will, be waived by any individual, an integral part thereof. The fact that the individual is willing to waive his protection cannot avail. The public good is entitled to protection and consideration; and if, in order to effectuate that object, there must be enforced protection to the individual, such individual must submit to such enforced protection for the public good." 27 R. C. L., Section 3, page 907.

There remain to be considered two other objections. The Referee excluded testimony tending to show that the employment was conditional. We find nothing in the record indicating what the claimed condition was, if there were one.

One might think, if he went into the realm of conjecture, that it would have been claimed that there was a breach by the plaintiff of

a condition as to discipline or failure to follow the instructions of the superintendent, which would have been entirely legitimate provisions in the employment contract. In the Michaud case, the court said that the school committee might approve a nomination conditionally, which implies the right in the superintendent to employ conditionally. Nevertheless, under the statute (vide Par. III of Section 44 of Chapter 19, R. S. 1930), in order for the school committee to dismiss a teacher because unfit to teach or whose services it deems unprofitable to the school, there is absolute necessity of due notice and investigation and that can not be dispensed with even by the teacher himself. Now then, if there were conditions in this employment contract, which had to do with discipline or the failure to follow the instructions of the superintendent, they came within the statute and so, upon the failure of such conditions, if there were such, the teacher had a right to be heard and could not be dismissed without due notice and investigation upon the part of the school committee. The Referee ruled "as a matter of law that the employment of plaintiff could not be conditional to an extent which would enable the defendant or its officers to dismiss plaintiff without a hearing." To this ruling, on the record as it is, we think the defendants take nothing by their exception.

Finally, it is contended that the Referee's report should not have been accepted because the decision can not stand on the remaining count in the writ, alleging the making of the contract by the school committee. In *Clapp* v. *Cumberland County Power & Light Co.*, 121 Me., 356, 117 A., 307, the court said on page 359, 117 A., on page 308:

"Strictly under the declaration there is no evidence upon which the verdict can be sustained; the negligence proved was not an issue under the declaration. But the point was not raised at the trial. If objection had been seasonably taken, an amendment would have been allowable. *McKinnon* v. *Ry.*, 117 Me., 239. The case having been fully tried, without surprise, so far as the record shows, to the defendant, we think that an amendment may be considered as made, *Wyman* v. *American Shoe Finding Co.*, 106 Me., 263, and the verdict allowed to stand."

The instant case was tried on the theory that a valid contract was made with the superintendent of schools and it was not contended that a legal contract could have been made with the school committee. Under these circumstances, the parties must be deemed to have consented to have the matter determined by the Referee as though the declaration had been amended, alleging the contract to have been made with the town by its superintendent of schools.

*Exceptions overruled.*