Lynn CHASSIE

v.

**DIRECTORS OF SCHOOL ADMINISTRATIVE DISTRICT NO. 36 and Ronald L. Jacques, Superintendent of Schools.**

Supreme Judicial Court of Maine.

May 6, 1976.

Locke, Campbell & Chapman by Frank G. Chapman, Augusta, for plaintiff.

Cloutier & Joyce by Edward H. Cloutier, Livermore Falls, for defendants.

Before DuFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

PER CURIAM.

This appeal is but one of many which have come before us involving teacher-school board relationships since the enactment of the Municipal Public Employees Labor Relations Act (26 M.R.S.A. c. 9–A).

Most such cases, including this one, have resulted from an appeal to the Superior

Court using Rule 80B, M.R.Civ.P., as the authorized vehicle. (26 M.R.S.A. § 972)

There appears to be no dispute between the parties as to the facts which gave rise to this dispute between a "nontenured" teacher and the Superintendent of Schools and the Directors of School Administrative District No. 36 (S.A.D. #36).

Basically, the facts are these. Appellee had been employed as a teacher in S.A.D. #36 for nearly three years. As such, he is what is called a "probationary" teacher in the applicable education statute. 20 M.R.S.A. § 161(5). By the express provisions of the statute, contracts issued

"after a probationary period of not to exceed 3 years, . . . shall be written for not less than 2 years, and unless a duly certified teacher receives written notice to the contrary at least 6 months before the terminal date of the contract, the contract shall be extended automatically for one year and similarly in subsequent years, although the right to an extension for a longer period of time through a new contract is specifically reserved to the contracting parties."

This provision of the statute is by its terms inapplicable to "probationary" teachers.

Chassie, the appellee, was notified by Jacques, one of the appellants, on March 27, 1973, that he (the superintendent) was

"not nominating you [Chassie] for employment for the school year 1973–1974. Accordingly, you will not be employed as a teacher in Maine School Administrative District No. 36 for the school year 1973–1974."

Shortly thereafter, appellee wrote Jacques requesting a statement of the specific reasons for his not being nominated for employment for the year 1973–1974. To this request Jacques answered,

"It is my feeling it is unprofitable to retain you as a teacher in this District."

At all times material hereto, there was in existence a collective bargaining contract (Contract) between the directors of S.A.D. #36 and S.A.D. #36 Teachers Association. Among many other things, this Contract provided that the purpose of its grievance procedure, for which provision was made therein,

"is to secure, at the lowest possible level, equitable solutions to the problem which from time to time may arise affecting the welfare or terms and conditions of employment of teachers."

It is on this provision of the Contract between the directors and the teachers association that the appellee bottoms his claim of right to have the efficacy of Jacques' refusal to nominate, subject to the grievance procedure provided by the Contract.

That he is a teacher within the definition found in Article I, Section 2 of the Contract is obvious.

The Justice of the Superior Court who sat in the 80B proceeding found that the failure to renew appellee's contract was a decision made "arbitrarily, capriciously, and in bad faith" by Jacques. He then ordered that the grievance procedure (Article II, Section III of the Contract) be utilized.

Appellants' appeal, which we must sustain, claims that the failure of a school superintendent to recommend reemployment of a probationary teacher cannot be made the subject of the grievance procedure because the obligation to recommend or not recommend is one committed to the school superintendent by statute. 20 M.R.S.A. § 161(5).

We find it unnecessary to reach this issue and we intimate no opinion as to what our answer might be should occasion arise to come to grips with such issue. We sustain the appeal because we find the parties did not, by their Contract, attempt to make such action on the part of the superintendent subject to the grievance procedure of the Contract. *Superintending School*

Committee of the City of Portland v. Portland Teachers' Assn., Me., 338 A.2d 155 (1975).

The statutory scheme whereby probationary teachers may become employed by a school superintendent as "tenured" teachers only after the superintendent has recommended such employment and the school board or the directors of the school administrative district has approved such recommendation has long been provided by our statute.[1]

The decision by a school superintendent not to nominate a probationary teacher for reemployment *in the year following the termination of his existing contract* is quite different from the act of *terminating the contract during its existence*. The statute clearly contemplates that when consideration is being given to nominating a probationary teacher for a contract for the year following the period of the existing contract, the superintendent is to evaluate the teacher's teaching ability to determine if tenure is merited. Many judgments are required to be made about subjective factors which are difficult to document with precision. These factors include the teacher's ability to inspire students; his mastery of and progress in his subject; and his capacity to work effectively with colleagues, supervisors, and parents.

It is the responsibility of the superintendent and the school board to insure the quality of the school system. This requires that only high quality teachers be employed in the system.

As this Court said in *Benson v. Inhabitants of Newfield*, 136 Me. 23, 1 A.2d 227 (1938):

"No agency for the promotion of the State's best interests and general welfare is of greater importance than the schools of the State. The education of its youth is paramount. It is highly essential that those who instruct our boys and girls in the plastic period of their lives be men and women of character as well as possessed of educational qualifications. With this in mind, the legislature very properly saw fit to regulate the employment of teachers not only in the interest of the public but as well in that of the teachers themselves. So it provided that the actual employment should be preceded by an election of a nominee for the position. This gives an opportunity for a painstaking consideration of the proposed teacher's worthiness and qualifications. It places responsibility directly upon the members of the school committee and the superintendent of schools, each performing his statutory duty to the end that he who is best fitted be chosen." 136 Me. at 26–27, 1 A.2d at 229.

In order that only high quality teachers be given tenure in the system, teachers are employed for a probationary period, during which their ability to perform satisfactorily is tested. In this way, unsatisfactory "tenured" teachers are kept at a minimum.

We conclude it is only reasonable to assume that both parties to the Contract with which we are here concerned were aware of this longstanding statutory scheme at the time they entered into the Contract.

If the action of the superintendent in failing to nominate a probationary teacher for a contract renewal were to be made subject to the grievance procedure of the Contract, certainly plainer language would have been employed to demonstrate this intention than "problem which from time to time may arise affecting the welfare or terms and conditions of employment of teachers." We interpret that phrase in the Contract to mean *the terms and conditions of employment of teachers which are described in the contract* to the exclusion of those problems which from time to time may arise from

1. It first appeared in *Public Laws of Maine, 1951, c. 203.*

*action of the superintendent taken pursuant to statutory direction.*[2]

Additionally, we note that the grievance procedure of the Contract provides for a four-level proceeding, commencing with the school principal and ending with arbitration. Certainly, it would be most inappropriate to have the failure of the superintendent to nominate subject to review at Level I (the school principal). Equally inappropriate would be Level II (the superintendent).

This reinforces our conclusion that the parties to the Contract never intended that the failure of the superintendent to nominate should be subject to the grievance procedure of the Contract.

Our conclusion is, then, that the Justice below was in error when he directed utilization of the grievance procedure of the Contract. This conclusion results inevitably from our determination that this teacher's complaint was not one which was contemplated by the terms of the Contract between S.A.D. #36 and S.A.D. #36 Teachers Association.

It follows the entry must be:

Appeal sustained.

All Justices concurring.

DELAHANTY, J., sat at argument but did not participate further in the case.

2. This Court has not had occasion to interpret this phrase in the Contract prior to this time. In an article appearing in 27 Me.L. Rev. 25 (1975), the author directs our attention to two unreported opinions of a Justice of the Superior Court [*Maine S.A.D. #37 v. Smith*, Washington Cty.Super.Ct., Civ.Docket 2509 (June 7, 1973); *Limestone School Comm. v. Limestone Teachers Assn.*, Aroostook Cty.Super.Ct., Civ.Docket 64–73 (May 22, 1973)], in both of which the opinion writer determined the language in a contract between the parties identical to the language in the Contract with which we are now concerned, did not authorize use of the grievance procedure outlined in the contract when a school superintendent failed to nominate a probationary teacher for reemployment in the year next following the expiration of his probationary contract. *McGuire, Public Employee Bargaining Under the Maine Municipal Public Employees Labor Relations Law: The First Five Years*, 27 Me. L.Rev. 25, 126–127 (1975).