SUPERINTENDING SCHOOL COMMIT-
TEE OF the TOWN OF WINSLOW

v.

WINSLOW EDUCATION ASSOCIATION.

Supreme Judicial Court of Maine.

Aug. 13, 1976.

Drummond, Wescott & Woodsom, by Hugh G. E. MacMahon, Harry R. Pringle, Portland, for plaintiff.

Locke, Campbell & Chapman, by Frank G. Chapman, Augusta, for defendant.

Before DUFRESNE, C. J., and *WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

In *Chassie v. Directors of School Administrative District No. 36*, Me., 356 A.2d 708 (1976), appellant argued that 20 M.R. S.A. § 161(5) was a bar to requiring, by interest arbitration, the insertion into a labor relations contract between a teachers' association and the teachers' employer a provision that the failure of the school superintendent to recommend reemployment of a probationary teacher be made the subject of the grievance procedure, including grievance arbitration, of such labor relations contract. We said of such argument when it was there raised:

"We find it unnecessary to reach this issue and we intimate no opinion as to

* Weatherbee, J., sat at argument and participated in consultation but died prior to preparation of opinion.

what our answer might be should occasion arise to come to grips with such issue." Me., 356 A.2d at 709.

In *Superintending School Committee v. Portland Teachers' Association,* Me., 338 A.2d 155 (1975), the issue with which we were then confronted arose in the framework of a claim that even though "class size" is classified as "educational policy" and, therefore, under the terms of 26 M.R.S.A. § 965(1)(C) it could not be made subject to interest arbitration, its impact on working conditions could properly be made the subject of "grievance" arbitration, if a contract so provided. On that occasion we said:

"We do not now decide, nor do we intimate what our decision would be, if a contract such as the one before us contained a clause which provided for *grievance arbitration* in areas excluded from *interest arbitration* as educational policies under 26 M.R.S.A. § 965(1)(C)." (Emphasis in original.) *Id.,* n. 4 at 158.

We now have before us a case in which interest arbitration was had concerning a teacher association proposal that a clause be inserted in the contract reading as follows:

"No teacher shall be disciplined, including reprimand, reduction in rank or compensation, suspension and dismissal, and no teacher on a continuing contract shall be denied renewal of contract, without just cause. Any such action asserted by the Committee or any agent or representative thereof shall be subject to the grievance procedure set forth in Article III.

"A probationary teacher whose contract is not renewed shall be entitled to written notice of the reasons for the failure of the Committee to renew the contract and a hearing before the Committee if requested by the teacher."

The arbitrators ordered the "teacher rights" clause in the contract be expanded to include the "just cause" section and the grievance procedure found in the proposed new clause.

The school committee employer sought review of the arbitrators' award in the Superior Court using Rule 80B, M.R.Civ.P., as the vehicle by which the matter was brought before the court. The Superior Court granted summary judgment in favor of the school committee employer.

This appeal by the teachers' representatives followed.

We deny the appeal.

This case raises two issues which are of first impression.

(1) Whether a school committee can be forced, through interest arbitration, to accept a clause providing for "just cause" in any disciplinary action or nonrenewal of contract and for grievance arbitration on whether the committee acted in fact with "just cause." [This in view of the provision of 20 M.R.S.A. § 161(5) and § 473(4).]

(2) Whether the "just cause" provision relates to an "educational policy" decision exempt from collective bargaining.[1]

---

1. 26 M.R.S.A. § 965(1)(C) provides that it shall be the obligation of the public employer and the bargaining agent:
   "To confer and negotiate in good faith with respect to wages, hours, working conditions and contract grievance arbitration, . . . except that public employers of teachers shall meet and consult but not negotiate with respect to educational policies for the purpose of this paragraph, educational policies shall not include wages,

hours, working conditions or contract grievance arbitration;"
For a discussion of how to decide what constitutes educational policy, see *City of Biddeford v. Biddeford Teachers Association,* Me., 304 A.2d 387 (1973). For dicta to the effect that dismissal of a teacher for cause is a matter of educational policy, see *West Hartford Education Association v. DeCourcy,* 162 Conn. 566 at 588, 295 A.2d 526 at 538 (1972), quoting with approval *Nor-*

We hold that the provisions of 20 M.R. S.A. § 161(5)[2] and § 473(4) vest the right and obligation to take action thereunder in the superintending school committee, and the school committee cannot be forced by interest arbitration to make their action taken thereunder subject to binding grievance arbitration. Since the order of the arbitrators is invalid on this ground, we need not reach the issue of whether the clause is an educational policy decision exempt from collective bargaining by express provision of 26 M.R.S.A. § 965(1)(C). Nor do we find it necessary to decide whether a school committee could have, prior to the enactment of P.L.1976, c. 723, voluntarily agreed to the inclusion of a provision for grievance procedure concerning such matters.[3]

The factual framework here before us is substantially as follows. The Winslow Education Association (the Association) and the Superintending School Committee of the Town of Winslow (the Committee) had entered into collective bargaining agreements for the school years 1971–1972 and 1972–1973. One of the items agreed upon in the 1972–1973 contract was a "teacher rights" clause providing certain procedural safeguards for teachers during any appearance before the superintendent, the school committee, or any committee or member thereof, which related to a formal disciplinary hearing concerning continuation of employment.

During the 1972–1973 school year, the parties negotiated for a contract to take effect the following year. The negotiations broke down, however, over four items, three of which are not concerned in this appeal. The fourth item sought to broaden the already existing "teacher rights" clause by requiring "just cause" for disciplinary actions, such as reduction in rank or dismissal, and by subjecting disciplinary actions to the grievance procedure already provided for in the 1972–1973 contract. The final step in the grievance procedure called for binding arbitration.

Following the breakdown of negotiations, the parties went into interest arbitration in accordance with 26 M.R.S.A. § 965(4).

The arbitration panel, consisting of a representative from both the Committee and the Association as well as a neutral arbitrator from the American Arbitration Association, ordered that the "teacher rights" clause be expanded to include the "just cause" section and the grievance procedure.

■ In determining whether a matter is subject to interest arbitration, a two-step examination must be made. The first step

*walk Teachers' Association v. Board of Education,* 138 Conn. 269 at 280, 83 A.2d 482 at 487, 31 A.L.R.2d 1133 (1951). *Contra, Board of Education of District of Philadelphia v. Philadelphia Federation of Teachers Local No. 3, AFT, AFL–CIO,* Pa., 346 A.2d 35 at 43 (1975).

2. In a special session of the legislature in 1976, 20 M.R.S.A. § 161(5) was amended by Public Laws of Maine, 1976, c. 723, to include the following provision:

"Just cause for dismissal or nonrenewal may be a negotiable item in accordance with the procedure set forth in Title 26, c. 9–A, for teachers who have served beyond the probationary period."

This provision, however, was not enacted until well after the appeal was filed in this case. The legislative history (Legislative Record, Senate, March 22, 1976, remarks of Sen. Katz at 579–580) indicates that the provision constitutes a change in the law rather than a clarification of already existing law. No matter what effect the amendment may have on subsequent cases raising similar issues, we need not concern ourselves here with the amendment's effect on the present case.

3. With the enactment of c. 723, P.L.1976, it seems clear that school committees and teacher associations may now voluntarily enter into a "just cause" and binding grievance arbitration provision. What the effect of the amendment will be on requiring interest arbitration on these issues, we do not decide at this time.

is to decide whether the matter is within the statutorily defined scope of bargaining. If it is, the next step is to determine whether the matter is limited by any other existing statutory enactments. *Board of Education of Union Free School District No. 3 of the Town of Huntington v. Associated Teachers of Huntington, Inc.*, 30 N.Y.2d 122, 331 N.Y.S.2d 17 at 21, 282 N.E. 2d 109 at 112 (1972). *See Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 at 268–269 (1975).

While no Maine statute expressly requires that interest arbitration in the field of education be limited by other existing statutes, this court has declared that 26 M.R.S.A. § 965(1)(C) is so limited. *City of Biddeford v. Biddeford Teachers Association*, Me., 304 A.2d 387, 397 (1973). Having decided that we need not reach the issue of "educational policy," we will focus our discussion on the second step.

Whether "just cause" standards, including binding grievance procedures, are permissible subjects for a collective bargaining agreement has been frequently litigated. No case, however, is directly on point. Either the litigation arises in a different procedural posture from the instant case or the statutes involved differ significantly from the Maine statutes.

In *Board of Education of District of Philadelphia v. Philadelphia Federation of Teachers Local No. 3, AFT, AFL–CIO*, Pa., 346 A.2d 35 (1975), the Pennsylvania court confronted the question of whether an agreement to submit the propriety of dismissing a nontenured teacher to arbitration was within the scope of collective bargaining. The question arose, after the board had already agreed to the contract, when the union filed a grievance on behalf of a dismissed teacher.

Where a board has *voluntarily* entered into a contract of this sort, a reviewing court must take a somewhat different view than should be taken when a board states at the outset that it will not enter into such a contract. In the first instance, the parties have bargained with each other, and the price for including a "just cause" provision may well have been the exclusion of another provision beneficial to the teachers. Furthermore, the board presumably knew what it was doing when it entered into the contract.

"We think it reasonable to believe that the Board entered into the master contract with due deliberation and legal advice, or it would not have adopted it. It cannot now abrogate its own contract for any of the reasons that have been presented here." *Danville Board of School Directors v. Fifield*, 132 Vt. 271, 315 A.2d 473, 476 (1974).

*See also Local 1226 Rhinelander City Employees AFSCME, AFL–CIO v. City of Rhinelander*, 35 Wis.2d 209, 151 N.W.2d 30 at 36 (1967), where the court distinguished the board's arguments relating to interest arbitration by noting that the case actually involved a grievance arising from an *already existing* agreement.

Where there are no existing contractual rights that may suffer by refusing to uphold "just cause" and arbitration provisions, a court may have wider latitude in deciding whether such provisions are mandatory subjects of collective bargaining.

There are other cases seemingly on point, until distinguished by a close examination of the statutes involved. In *Board of Education of Union Free School District No. 3 of the Town of Huntington v. Associated Teachers of Huntington, Inc.*, supra, the board questioned its power to enter into a "just cause" and binding grievance arbitration provision. The New York court held that this was a "term or condition of employment" and as such was mandatorily bargainable under the Taylor Law in the absence of a statutory provision circumscribing the board's power. *Id.*, 331 N.Y.S.2d at 22, 282 N.E.2d at 112. The New York Tenure Law provides that

prior to any disciplinary hearing by the board, a teacher must be afforded a hearing before an impartial panel which then submits recommendations to the school board. These recommendations are not binding. The *Huntington* court found that there was no conflict between the statute and any grievance arbitration. Since a decision by the board was a prerequisite to arbitration, the grievance procedure did not supplant the Tenure Law. *Id.*, 331 N.Y.S.2d at 24, 282 N.E.2d at 114.

In the instant case, Maine statutes do not provide for procedures prior to the committee's hearing. 20 M.R.S.A. § 473(4) states that the school committee shall

"[a]fter investigation, due notice of hearing, and hearing thereon, . . . dismiss any teacher, although having the requisite certificate, who proves unfit to teach or whose services they deem unprofitable to the school; . . . ."

This statute sets forth the procedural steps the committee must take as well as the reasons which justify dismissal. Unlike the New York Tenure Law, our statute relates to the actual conduct of the hearing itself.

Similarly, 20 M.R.S.A. § 161(5) describes the requirements for a hearing for nonrenewal of a contract.[4] The only way

that the "just cause" provision in this case may stand is if 20 M.R.S.A. § 161(5) (prior to amendment) and § 473(4) can be held to be nonexclusive.

The Association argues that these two sections and the cases interpreting them, such as *Wright v. Superintending School Committee of the City of Portland,* Me., 331 A.2d 640 (1975) and *Sawin v. Town of Winslow,* Me., 253 A.2d 694 (1969), merely provide a different way of saying "just cause." Moreover, the provision for binding grievance arbitration is merely an alternative appeal procedure to judicial appeal available under Rule 80B. The Association views §§ 161(5) and 473(4) as minimum substantive and procedural due process requirements to be followed by the Committee, as opposed to a provision for a method of appellate review.

Even viewing the "just cause" provision as only a means of insuring that the Committee has not acted arbitrarily (and it is not entirely clear that this is a proper interpretation of the clause), the Association's argument still lacks merit.

In *West Hartford Education Association v. DeCourcy,* 162 Conn. 566, 295 A.2d 526 (1972), the court held that the board of education had the exclusive power to determine what extracurricular activities should

---

4. 20 M.R.S.A. § 161(5) before the amendment read in pertinent part as follows:
"A superintendent of schools shall have the following powers and duties:
\* \* \* \* \*
"5. He shall nominate all teachers, . . . he may employ teachers so nominated and approved for such terms as he may deem proper, subject to the approval of the school committee or school directors. Except that after a probationary period of not to exceed 3 years, subsequent contracts of duly certified teachers shall be for not less than 2 years, and unless a duly certified teacher receives written notice to the contrary at least 6 months before the terminal date of the contract, the contract shall be extended automatically for one year and similarly in subsequent years until age 65, although the right to an extension for a longer period of time through a new contract is specifically reserved to the contracting parties. No 2-year contract shall be issued to any teacher age 64 or over. The superintendent may nominate and the school committee may elect teachers age 65 and over for a one-year period. After a probationary period of 3 years, any teacher, who receives notice in accordance with this section that his contract is not going to be renewed, may during the 15 days following such notification request a hearing with the school committee or governing board. He may request reasons. The hearing shall be private except by mutual consent and except that either or both parties may be represented by counsel. Such hearing must be granted within 30 days of the receipt of the teacher's request."

be offered. It reached this result based on a statute stating that

> "Boards . . . shall . . . provide *such other educational activities as in their judgment* will best serve the interests of the town." (Emphasis in original.) *Id.,* 295 A.2d at 537, quoting C.G.S.A. § 10–220.

■ The language "as in their judgment" implied that the Board's discretion was exclusive. 20 M.R.S.A. § 473(4) provides for dismissal of teachers who are unfit or who *the committee deems* to be unprofitable. This language demonstrates that, at least as regards dismissal, the legislature vested sole authority in the school committee, subject only to judicial review.

■ Even in regard to nonrenewal of a contract, the Committee's power is exclusive in that it cannot be forced into interest arbitration in this area. The Association's argument that the disputed provision is merely procedural is answered by the Illinois court in *Lockport Area Special Education Cooperative v. Lockport Area Special Educational Cooperative Association,* 33 Ill.App.3d 789, 338 N.E.2d 463 (1975). There, the court stated that:

> "As we view the agreement, the determination of whether or not just cause exists is not a procedural question, but is in fact the very issue at the heart of the exercise of the Board's discretion. To permit that determination to be made by an arbitrator, in a manner which would be binding on all concerned, is to effectively delegate to the arbitrator the power to retain or dismiss . . . teachers . . . .. If the arbitrator decides that there was just cause, the Board's decision to dismiss may be carried out. If he decides that there was not just

cause, the Board would have no alternative but to retain the teacher and even perhaps to grant the teacher continued contractual service . . . ." *Id.,* 338 N.E.2d at 466.

The court went on to say that:

> "The very issue of whether or not just cause in fact exists is to be determined by the Board. The Board may only agree to follow certain procedures before making a determination, which only the Board can make." *Id.,* 338 N.E.2d at 466–467.

In providing a process for dismissal and nonrenewal of a contract, the legislature has balanced the various interests involved in order to protect not only teachers but the public interest in insuring that children are well-taught. *Beckett v. Roderick,* Me., 251 A.2d 427 (1969); *Benson v. Inhabitants of Newfield,* 136 Me. 23, 1 A.2d 227 (1938); *McGuire and Dench, Public Employee Bargaining Under the Maine Municipal Public Employees Labor Relations Law: The First Five Years,* 27 Me.L.Rev. 25 (1975).

■ Given both the language of 20 M.R.S.A. § 161(5) and § 473(4) and the delicate balancing achieved by the legislature in those statutes prior to the enactment of P.L.1976, c. 723, we conclude that the school committee cannot be forced by interest arbitration to accept the "just cause" and arbitration provisions in the 1973–1974 collective bargaining agreement.

The entry must be:

Appeal denied.

DELAHANTY, J., did not sit.

All Justices concurring.