### BOARD OF DIRECTORS OF MAINE SCHOOL ADMINISTRATIVE DISTRICT NO. 36

v.

### MAINE SCHOOL ADMINISTRATIVE DISTRICT NO. 36 TEACHERS ASSOCIATION.

Supreme Judicial Court of Maine.

Argued March 4, 1980.

Decided April 16, 1981.

---

19. Quoted *supra* n. 8.

Drummond Woodsum Plimpton & Mac-Mahon, Hugh G. E. MacMahon (orally), Daniel Amory, Portland, for plaintiff.

Sunenblick, Fontaine & Reben, Stephen P. Sunenblick (orally), Portland, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

PER CURIAM.

The Maine School Administrative District No. 36 Teachers Association (Association) appeals from a judgment of the Superior Court, Androscoggin County, denying the Association's motion to confirm an arbitration award and vacating the award on motion of the Board of Directors of Maine School Administrative District No. 36 (Board). The arbitrator had ruled that the Board violated the procedures governing requests for voluntary transfer to vacancies within the district as provided in article XIII of the collective bargaining agreement between the parties. We are called upon to decide whether a school board can make its statutory authority over hiring teachers subject to grievance arbitration. We determine that it cannot. Accordingly, we affirm the Superior Court's judgment.

The Board has also filed a cross-appeal from the Superior Court's granting a motion to strike an affidavit submitted by the Board before the Superior Court hearing. Our resolution of the Association's appeal renders this issue moot, so we therefore dismiss the Board's cross-appeal.

This case arises from the filling of a junior high school teaching position. In the spring of 1978, a vacancy developed in an eighth grade science position in District 36.[1] Patricia Bierce, a sixth grade teacher, was the only teacher within the system to apply for the position. The Board considered Bierce along with the other applicants but hired a teacher from outside the system. The Association initiated grievance proceedings on behalf of Bierce, alleging a violation of article XIII(B) of its contract.

The relevant part of article XIII reads:

*Transfers, Reassignments, and Promotions*

A. 1. No later than three (3) weeks after issuance of contracts each school

---

1. M.S.A.D. 36 includes the public schools in the towns of Fayette, Livermore, and Livermore Falls.

year, the Superintendent shall post in all school buildings a list of officially existing vacancies which shall occur during the following school year.

2. Teachers who desire a change in grade and/or subject assignment, a transfer to another building, or a promotion shall file a written statement with the Superintendent. Such statement shall include the grade and/or subject, school or schools, and promotional position to which he desires to be transferred.

. . . .

B. In the determination of requests for voluntary re-assignment or transfer, the wishes of the individual teacher shall be honored to the extent that the transfer does not conflict with the instructional requirements and best interests of the school system. If more than one teacher has applied for the same position, the length of service in the system will be a major consideration in the determination as to which teacher shall be transferred or re-assigned voluntarily. In no event, will seniority serve as the sole criteria for granting the request of one individual over another.

After the first levels of the grievance procedure proved unavailing, the Association demanded arbitration.[2] The arbitrator rejected the Board's contention that the phrase in article XIII(B) referring to "the instructional requirements and best interests of the school system" allowed it to compare all the applicants and to choose from that pool a more qualified outside applicant. Instead, the arbitrator interpreted article XIII(B) as requiring a preference in favor of applicants within the system. Therefore, the Board could look out-

side the system only after specifically finding that the transfer of any certified present teacher would conflict with the instructional requirements and best interests of the system. In reaching this conclusion, the arbitrator limited the scope of his inquiry to the terms of the collective bargaining agreement, commenting that whether the Board had exceeded its statutory powers by agreeing to article XIII(B) was a legal issue outside his proper role to decide.[3] He then ordered the Board to grant to Bierce the transfer for the following year.

After hearing the application to vacate and the motion to confirm the arbitration award, the Superior Court held that "the hiring of school teachers is the non-delegable, managerial prerogative of school superintendents with the approval of school committees or school directors," citing *Berkshire Hills Regional School District Committee v. Berkshire Hills Education Association,* 375 Mass. 522, 377 N.E.2d 940 (1978). The justice recognized the distinction between grievance arbitration as to hiring procedures and arbitration as to a teacher's entitlement or right to a vacant position. *See School Committee of West Springfield v. Korbut,* 373 Mass. 788, 369 N.E.2d 1148 (1977). He pointed out that it is reasonable and proper for the collective bargaining agreement to set forth procedures for processing a teacher's application for transfer, but he concluded that the arbitrator's opinion impermissibly usurped the powers and responsibilities granted by 20 M.R.S.A. § 161(5) to the superintendent and school committee.

Title 20, M.R.S.A. § 161(5),[4] gives the superintendent of schools the responsibility

---

2. The contract between the School District and the Association provides four levels of formal grievance resolution, starting with the principal, progressing through the superintendent and the board of directors, and, if the grievant is still unsatisfied, reaching arbitration at level four.

3. We do not imply our acceptance of the arbitrator's decision not to interpret the lawfulness of the provision. *See Board of Directors of M.S.A.D. No. 33 v. Teachers' Ass'n of M.S.A.D. No. 33,* Me., 395 A.2d 461, 463 (1978).

4. 20 M.R.S.A. § 161 (Supp.1980) provides, in part, as follows:

 A superintendent of schools shall have the following powers and duties:

 . . . .

 5. *Shall nominate teachers; election to be approved by committee; probationary period; teachers may be elected under contract.* He shall nominate all teachers, subject to such regulations governing salaries and the qualifications of teachers as the school committee or school directors shall make, and upon the approval of nominations by said

of nominating new teachers, subject to the approval of the board of directors. In *Superintending School Committee of the Town of Winslow v. Winslow Education Association*, Me., 363 A.2d 229, 231 (1976), we held that:

> the provisions of 20 M.R.S.A. § 161(5) and § 473(4) vest the right and obligation to take action thereunder in the superintending school committee, and the school committee cannot be forced by interest arbitration to make their action thereunder subject to binding grievance arbitration.

*Winslow*, which concerned dismissal of probationary teachers under section 473(4),[5] left open the question whether a school board could voluntarily agree to grievance procedures.

The Association contends that article XIII escapes the defect of the contract provision struck down in *Winslow* because it does not directly conflict with 20 M.R.S.A. § 161(5). It reasons that section 161(5) merely establishes hiring procedures, so the section does not preclude establishing a limited transfer preference as one of the criteria for hiring teachers. In addition, the Association argues, because section 161(5) allows a board of directors to make regulations for the qualifications of teachers a board may voluntarily agree to give a preference to transfer applicants. Although such a condition may not be imposed on a board through interest arbitration, the board's freely agreeing to limit its own discretion does not violate the statute. The Association points to the distinction drawn in *Winslow* between grievance arbitration based on existing contracts and interest arbitration of contract disputes:

Where a board has *voluntarily* entered into a contract of this sort, a reviewing court must take a somewhat different view than should be taken when a board states at the outset that it will not enter into such a contract. In the first instance, the parties have bargained with each other, and the price for including a ... provision may well have been the exclusion of another provision beneficial to the teachers. Furthermore, the board presumably knew what it was doing when it entered into the contract.

363 A.2d at 232. The Association concludes that because the statute does not *expressly* preclude voluntary agreements governing hiring procedures, the Board, having voluntarily entered the agreement, must be bound by it.

 Although we find the Association's logic otherwise persuasive, we must disagree with its underlying premise that section 161(5) merely establishes hiring procedures and allows the board voluntarily to limit its control over hiring teachers. Section 161(5) does provide a procedural sequence for the exercise of the duties of the school superintendent and board, but its effect goes beyond merely establishing a procedural framework. Rather, we find in that section's mandatory language a specific legislative intent to reserve to the school board and superintendent responsibility for filling teaching positions. Therefore, the Board could not lawfully limit its statutory responsibility for choosing teachers through a collective bargaining agreement, even though entered into voluntarily.

Our interpretation of section 161(5) is reinforced by our prior recognition of the special position occupied by teachers com-

---

committee or directors, he may employ teachers so nominated and approved for such terms as he may deem proper, subject to the approval of the school committee or school directors.

**5.** 20 M.R.S.A. § 473 provides, in part, as follows:

Superintending school committees and school directors shall perform the following duties:

....

4. *Teachers dismissed.* After investigation, due notice of hearing, and hearing thereon, they shall dismiss any teacher, although having the requisite certificate, who proves unfit to teach or whose services they deem unprofitable to the school; and give to said teacher a certificate of dismissal and of the reasons therefor, a copy of which they shall retain. Such dismissal shall not deprive the teacher of compensation for previous services....

pared to other public employees. We have frequently stressed the importance to the education of our youth of choosing good teachers. *E. g., Chassie v. Directors of School Administrative District No. 36,* Me., 356 A.2d 708, 710 (1976); *Beckett v. Roderick,* Me., 251 A.2d 427, 432 (1969). To ensure the selection of the best possible teachers, the legislature "places responsibility directly upon the members of the school committee and the superintendent of schools, each performing his statutory duty to the end that he who is best fitted be chosen." *Benson v. The Inhabitants of the Town of Newfield,* 136 Me. 23, 27, 1 A.2d 227, 229 (1938). An agreement whereby the Board agrees to prefer potentially less qualified teachers within the system conflicts with the purpose of placing responsibility over hiring on the Board.

Although we affirm the vacation of the award, we recognize the possible adverse impact on the collective bargaining process of permitting one of the parties to a collective bargaining agreement to claim that a provision is unenforceable. Nevertheless, where the statutory responsibility is clear, we must hold that article XIII(B) as interpreted by the arbitrator is unlawful.[6]

The entry will be:

Judgment of the Superior Court affirmed.

All concurring.

---

[6] By this decision we do not recognize any implied "management prerogative" exceptions to the scope of public sector collective bargaining. *See State v. Maine Labor Relations Board,* Me., 413 A.2d 510, 514 (1980). We exclude the area of teacher hiring only because of the dictate of the statute.