## BAKER BUS SERVICE

v.

## Edward H. KEITH et al.

Supreme Judicial Court of Maine.

Argued March 5, 1981.

Decided April 6, 1981.

William F. Hufnagel (orally), Winthrop, for plaintiffs.

Beins, Axelrod & Osborne, P.C., Jonathan G. Axelrod (orally), Washington, D.C., for Teamsters Local Union 48.

Michael C. Ryan (orally), Maine Labor Relations Board, Augusta, Gary F. Thorne, Mitchell & Stearns, Bangor, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN and CARTER, JJ.

McKUSICK, Chief Justice.

On May 29, 1979, Teamsters Union Local No. 48 filed with the Maine Labor Relations Board a prohibited practice complaint against Baker Bus Service alleging that Baker Bus had violated the Municipal Public Employees Labor Relations Act,[1] 26 M.R. S.A. § 964(1)(A) and (B),[2] by discharging an employee bus driver, Prescott Chapman, because of his union activities. In its decision of March 3, 1980, the Board ordered Baker Bus to cease and desist from interfering with or discouraging union activities of Local 48 members and to make an offer of reinstatement with back pay to Chapman. On September 4, 1980, the Superior Court (Kennebec County) affirmed the decision of the Board finding the reasons given by Baker Bus for the discharge were "primarily pretextual." On the employer's further appeal to this court, we affirm the judgment of the Superior Court.

1. In *Baker Bus Service v. Keith*, Me., 416 A.2d 727 (1980), we affirmed the Maine Labor Relations Board's determination that Baker Bus "to the extent that it operates the school bus system" for the City of Augusta is a "public employer" subject to the Board's jurisdiction under the Municipal Public Employees Labor Relations Act.

2. 26 M.R.S.A. § 964(1) (1974) provides in pertinent part as follows:

1. Public employer prohibitions. Public employers, their representatives and their agents are prohibited from:

A. Interfering with, restraining or coercing employees in the exercise of the rights guaranteed in section 963;

B. Encouraging or discouraging membership in any employee organization by discrimination in regard to hire or tenure of employment or any term or condition of employment;

. . . .

On its appeal to the Law Court, Baker Bus asserts that both the Board and the Superior Court based their decisions upon a legal rule that a discharge is a prohibited practice under the Municipal Public Employees Labor Relations Act even if it is motivated by antiunion animus only in part or as only one of several factors, and that such a legal rule is erroneous. Baker Bus contends that, to make a discharge unlawful under the Act, antiunion animus must be the dominant motive for the employer's action.[3]

Although the Board has apparently adopted the "in part" rule, we have no occasion in the case at bar to choose between the two competing standards of proof. In any event, the Board found that the employer's reasons for discharging Chapman were primarily pretextual and that the only significant reason for the discharge was to interfere with union activity.[4] In other words, the Board found as a fact that Baker Bus' dominant motive in firing the employee was to discourage or interfere with unionization. On the record before the Board, that finding is not clearly erroneous and so it is binding on any appellate court. M.R.Civ.P. 52(a). Even if we were to adopt the more demanding "dominant motive" standard of proof, the Board's conclusion that Baker Bus had committed a prohibited practice would still stand.[5]

The entry shall be:

Appeal denied.

Judgment affirmed.

All concurring.

---

**3.** In interpreting the Municipal Public Employees Labor Relations Act, it has been the policy of this court to look for guidance to parallel federal law, found in the National Labor Relations Act and decisions thereunder. *See Sanford Highway Unit of Local 481 v. Town of Sanford*, Me., 411 A.2d 1010 (1980); *Caribou School Dept. v. Caribou Teachers Ass'n*, Me., 402 A.2d 1279 (1979). The provisions of the Maine Act involved in this case, 26 M.R.S.A. §§ 964(1)(A), 964(1)(B), and 968(5)(C), have close counterparts in the National Labor Relations Act, 29 U.S.C.A. §§ 158(a)(1), 158(a)(3), and 160(c). The United States courts of appeals disagree as to the required degree of causal connection between antiunion motive and a discharge to make the employer's action an unfair labor practice under the federal act. *Compare Edgewood Nursing Center, Inc. v. NLRB*, 581 F.2d 363 (3rd Cir. 1978) (in part test), *with NLRB v. Fibers Int'l. Corp.*, 439 F.2d 1311 (1st Cir. 1971) (dominant motive test).

**4.** The Board's carefully detailed opinion stated its factual conclusions as follows:

Hewett [president of Baker Bus] saw Chapman as a strong union adherent because of his voluntary attendance at the pre-hearing conference regarding an alleged prohibited practice against Elvin and because of his close alliance with Elvin, the key union adherent. We conclude that the claimed reasons for the discharge are primarily pretextual and at best an effort to capitalize on a minor transgression by Chapman and to utilize it to mask an attempt both to retaliate against an open union adherent and to discourage Elvin and the general union effort being made by employees on behalf of Local 48. We reach these conclusions primarily from four factors that emerge from the record: (1) Hewett's post-discharge comments to Elvin, (2) the sheer unlikelihood of discharge as a reasonable remedy for a minor error of judgment and a questionable, unsubstantiated complaint about a minor matter from a chronic complainer, (3) Hewett's inconsistent and less than credible explanations for his actions, and (4) the atmosphere of anti-union hostility that pervades the enterprise.

**5.** Since the Board's findings of fact, well supported in the record, exclude the existence of "cause" for Baker Bus to discharge Chapman, we do not consider, and do not even intimate an opinion on, Baker Bus' contention that the reinstatement and back pay order of the Board was prohibited by 26 M.R.S.A. § 968(5)(C), which reads in pertinent part:

No order of the board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause.