## SUPERINTENDING SCHOOL COMMITTEE OF the CITY OF BANGOR

v.

## BANGOR EDUCATION ASSOCIATION et al.

Supreme Judicial Court of Maine.

Argued Nov. 6, 1980.

Decided Aug. 7, 1981.

Vafiades, Brountas & Kominsky, Lewis V. Vafiades, Charles E. Gilbert, III (orally), Bangor, for plaintiff.

Sunenblick, Fontaine & Reben, Donald F. Fontaine (orally), M. Elaine Patrick, Portland, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN,* ROBERTS and CARTER, JJ.

* GLASSMAN, J., sat at oral argument and participated in the initial conference but died before the opinion was adopted.

NICHOLS, Justice.

This is an appeal from a judgment of the Superior Court (Penobscot County) affirming an arbitration award by an interest arbitration panel. The Plaintiff, Superintending School Committee of the City of Bangor, contends that the award is non-binding. The Committee also challenges the constitutionality of the provision of the Municipal Public Employees Labor Relations Law (26 M.R.S.A. §§ 961 *et seq.*) which empowers private arbitration panels to determine in binding fashion certain disputed issues upon the request of one of the bargaining parties. The latter was discussed, but not decided, by an evenly divided court in *City of Biddeford v. Biddeford Teachers Association*, Me., 304 A.2d 387 (1973).

We affirm the judgment below.

This dispute originated in negotiations between the Plaintiff Committee and both the Custodians Bargaining Unit and the Maintenance Workers Bargaining Unit of the Defendant, Bangor Education Association.[1] The parties were unable to agree upon a new labor agreement to take effect on January 1, 1978, after their previous labor agreement expired. One point of disagreement focused on the Defendant's proposal that the following language be put in the contract:

The Committee agrees that it will not subcontract bargaining unit work.

The Plaintiff opposed adding any subcontracting provision to the Agreement; the previous agreement contained no reference to subcontracting.

The Defendant invoked the dispute-resolution provisions of the governing Act (26 M.R.S.A. § 965(2–4)). When neither mediation nor fact-finding resolved the dispute over this proposed provision, it was submitted to arbitration. The arbitration panel determined that the following language should be put in the new agreement:

Nothing in this contract shall be interpreted as limiting the right of the committee to subcontract work, except that such subcontracting shall not cause the discharge or layoff of any member of the bargaining unit.

The Plaintiff brought an action for review of this determination under M.R.Civ.P. 80B (pursuant to 26 M.R.S.A. § 972), and for declaratory judgment in Superior Court. After hearing, judgment was entered affirming the arbitration award and declaring 26 M.R.S.A. § 965(4) to be constitutional.

■ A two-step examination must be made to determine whether a matter is subject to interest arbitration. "The first step is to decide whether the matter is within the statutorily defined scope of bargaining. If it is, the next step is to determine whether the matter is limited by any other existing statutory enactments." *Superintending School Committee of the Town of Winslow v. Winslow Education Association*, Me., 363 A.2d 229, 231–32 (1976).

It is the obligation of the public employer and the bargaining agent "[t]o confer and negotiate in good faith with respect to wages, hours, working conditions and contract grievance arbitration . . . ." 26 M.R.S.A. § 965(1)(C).

Here, the arbitration award does not purport to limit the Plaintiff's right to subcontract work. Rather, the award limits the *impact* of a decision to subcontract by prohibiting the discharge or layoff of any bargaining unit member as a result of subcontracting. That limitation clearly affects "wages, hours, [and] working conditions." Thus, the impact of subcontracting with regard to the continued employment of bargaining unit members is within the statutorily defined scope of bargaining. *See State v. Maine Labor Relations Board*, Me., 413 A.2d 510, 513–14 (1980) (construing State Employees Labor Relations Act, 26 M.R.S.A. §§ 979 *et seq.*).

1. The other Defendant, Beth Supranovitch, is the President of the Bangor Education Association.

■ The Plaintiff points to 20 M.R.S.A. § 473(1) (Supp.1980–81) as limiting the scope of interest arbitration. The statute cited ordains that superintending school committees and school directors shall manage the custody and care of all school property. However, the mere fact that a particular subject matter may be covered by legislation does not exclude it from collective bargaining. The general power to manage school property "must be exercised within the environment of collective bargaining as to 'wages, hours [and] working conditions.' " *See id.* at 515; *Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 337 A.2d 262 (1975). Again, it is not the decision whether or not to subcontract that is limited; rather it is the impact of such a decision on wages, hours, and working conditions that is limited.

■ The Plaintiff also contends that, pursuant to 26 M.R.S.A. § 965(4), the arbitration award is advisory only. That section provides that while the arbitrator's determinations with respect to subjects *other than* salaries, pensions and insurance are binding on both parties, the arbitrator's recommendations and findings with respect to a controversy over salaries, pensions and insurance are advisory only.

We do not read this exception so broadly as to make advisory an arbitrator's determination of any issue that may involve money costs.

> That money costs may become involved— with potential for impact upon . . . the overall budgeting appropriations and tax

rate of the public employer does not suffice, *ipso facto,* to exclude from negotiability or binding arbitration any concrete item substantially related to "working conditions."

*City of Biddeford v. Biddeford Teachers Association,* Me., 304 A.2d 387, 422 (1973).[2] Nor does this issue fit within the ordinary, plain meaning of salaries, pensions or insurance. *See id.* at 418 (Wernick, J.).

We conclude that the arbitrator's award is binding upon both parties. It is within the statutorily defined scope of bargaining, and, moreover, there appears to be no statutory provision which expressly excludes it from interest arbitration.

■ The Plaintiff contends that the governing Act is constitutionally invalid in that it delegates power to private arbitration panels without adequate standards or safeguards to protect against unfair and arbitrary decisions.[3] In *City of Biddeford v. Biddeford Teachers Association,* Me., 304 A.2d 387 (1973), we unanimously rejected an attack on the arbitration provisions of the same Act which was based upon the circumstance that authority is delegated, not to public administrative boards or agencies, but to ad hoc private panels. However, the Court divided evenly on the question of whether the Act provides adequate standards or safeguards to protect against unfair and arbitrary decisions.

We now find such standards and safeguards adequate to meet the requirement of the state and federal constitutions.[4]

---

2. The Plaintiff relies heavily upon the following language in the unanimous portion of Justice Weatherbee's opinion in *Biddeford Teachers Association:*

> We consider that there is a rational reason for the Legislature's decision that its purposes would be best effectuated if the parties are left to choose their own arbitrators in the *limited non-policy areas* which are subject to arbitration.

*Id.* at 398 (emphasis added). We read "non-policy areas" as referring to *non-educational* policy areas, which are specifically excluded from the statutory scope of collective bargaining by 26 M.R.S.A. § 965(1)(C), and thus are not "subject to arbitration." Controversies

over salaries, pensions and insurance, while not subject to *binding* arbitration, are "subject to arbitration."

3. We note that it has been held elsewhere that compulsory binding arbitration between municipalities and firemen does *not* involve a delegation of legislative power. *See State v. City of Laramie,* 437 P.2d 295, 301–02 (Wyo.1968).

4. In Article III our Maine Constitution expressly sets forth the doctrine of separation of powers. *See Board of Overseers of the Bar v. Lee,* Me., 422 A.2d 998, 1001–02 (1980). The requirement of adequate standards and safeguards in the delegation of authority derives

The basic constitutional requirement for a valid legislative delegation of power is that there be "sufficient standards—specific or generalized, explicit or implicit" to prevent arbitrary and irresponsible exercise of the delegated power by ad hoc boards of arbitration. *Biddeford Teachers Association*, 304 A.2d at 400; *see Central Maine Power Co. v. Public Utilities Commission*, Me., 414 A.2d 1217, 1224 (1980).

■ We do not merely focus upon standards, however. Protection against uncontrolled discretionary power can be accomplished by adequate procedural safeguards. *State v. Boynton*, Me., 379 A.2d 994, 995 (1977); K. Davis, *Administrative Law Treatise* § 3:14 (2d ed. 1978). Especially where it would not be feasible for the Legislature to supply precise standards, the presence of adequate procedural safeguards may be properly considered in resolving the constitutionality of the delegation of power. *Boynton*, 379 A.2d at 995.

Such is the case here.

Formulation of rigid standards for the guidance of arbitrators in dealing with complex and often volatile issues would be impractical, and might destroy the flexibility necessary for the arbitrators to carry out the legislative policy of promoting the improvement of the relationship between public employers and their employees. *See City of Richfield v. Local No. 1215, International Association of Fire Fighters*, 276 N.W.2d 42, 47 (Minn.1979); *Harney v. Russo*, 435 Pa. 183, 255 A.2d 560, 563 (1969).

We affirm the view expressed in *Biddeford Teachers Association* by Wernick, J.:

Unless we would destroy all significance in the expressed legislative policy that binding arbitration is an implementing method "to promote the improvement of the relationship between public employers and their employees" [26 M.R.S.A. § 961], it must be held an implicit minimal injunction of the statute that the arbitrators act reasonably and fairly to effect accommodation within the bounds developed by the parties and the positions asserted by them.

304 A.2d at 412. That legislatively prescribed standard of delegation, coupled with both the procedural safeguards pertaining to the conduct of the hearing[5] and the provisions of the Act for judicial review,[6] amply withstand the Plaintiff's challenge to this Act on constitutional grounds.

Moreover, the ever-widening use of arbitration in labor disputes, particularly in the public sector, has resulted in the evolution of criteria which have become inherent in today's arbitration process.

[T]he arbitrator must act within the scope of the authority delegated to him. He must consider the public interest and the impact of his decision on the public welfare. He must act fairly and reasonably to the end that labor peace between the public employer and its employees will be stabilized and promoted.

*Division 540, Amalgamated Transit Union v. Mercer County Improvement Authority*, 76 N.J. 245, 386 A.2d 1290, 1294 (1978).[7]

from the due process clause. Me.Const. art. I, § 6-A.

Articles I, II, and III of the United States Constitution establish the separation of powers doctrine at the federal level. Specifically, U.S. Const. art. I, § 8[18] vests in Congress the power to make all laws as are "necessary and proper." The due process clauses of the federal constitution are, of course, found in Amendments V and XIV.

**5.** *See* 26 M.R.S.A. § 965.

**6.** 26 M.R.S.A. § 972 provides:
Either party may seek a review by the Superior Court of a binding determination by an arbitration panel. Such review shall be

sought in accordance with the Rules of Civil Procedure, Rule 80B.
The binding determination of an arbitration panel or arbitrator, in the absence of fraud, upon all questions of fact shall be final. The court may, after consideration, affirm, reverse or modify any such binding determination or decision based upon an erroneous ruling or finding of law. An appeal may be taken to the law court as in any civil action.

**7.** The New Jersey Supreme Court also listed as an inherent criterion that the arbitrator make adequate findings to support his award. It is not necessary for us to reach the question of that requirement here. The decision making process in interest arbitration under such a tripartite structure as this Act provides, *see* 26

In sum, we conclude that the Act governing this arbitration affords the bargaining parties certain inherent standards as well as providing them with procedural safeguards which meet the constitutional tests.

The entry will be:

Judgment affirmed.

All concurring.

M.R.S.A. § 965(4), is, as Professor Mironi has observed, "essentially one of 'structured negotiation-mediation' rather than of adjudication." Mironi, *The Functional Approach to Judicial Oversight of Specialized Tribunals—A Case Study*, 52 N.Y.U.L.Rev. 745, 789 (1977).