LISBON SCHOOL COMMITTEE

v.

LISBON EDUCATION ASSOCIATION.

LISBON EDUCATION ASSOCIATION, et al.

v.

LISBON SCHOOL COMMITTEE, et al.

Supreme Judicial Court of Maine.

Argued Nov. 12, 1981.

Decided Dec. 10, 1981.

---

Sayer & Golden, Michael Sayer (orally), Lisbon Falls, for plaintiff.

Sunenblick, Fontaine & Reben, Stephen Sunenblick (orally), Portland, for defendant.

Before McKUSICK, C.J., ROBERTS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A.R.J.

ROBERTS, Justice.

The Lisbon Education Association (Association), on behalf of teacher Prudence Grant, followed a four-step grievance procedure against the Lisbon School Committee (Committee) resulting ultimately in arbitration pursuant to the terms of the parties' collective bargaining agreement (Agreement). The Superior Court, Androscoggin County, confirmed the arbitration award ordering the Committee to immediately reinstate Prudence Grant and compensate her for "all lost wages and benefits from the date of termination through the date of reinstatement, less the amount she earned during that period from daytime weekday employment, plus 10% interest per annum on the net amount owing to her." From that judgment (Superior Court Docket No. CV–81–44) the Committee has appealed. The Committee did not seek a stay of the Superior Court's judgment pending appeal.

Subsequent to the filing of the Committee's appeal, the Association and Grant filed a complaint seeking to hold the Committee in contempt for failing to comply with the Superior Court's judgment. Holding that M.R.Civ.P. 62 automatically stayed that judgment pending appeal, the Superior Court dismissed the complaint (Superior Court Docket No. CV–81–261). The Association and Grant have appealed. By order of the Law Court the two appeals have been consolidated. We affirm the judgment of dismissal in CV–81–261. We affirm the judgment in CV–81–44 in part, but in part vacate and remand to the Superior Court with instructions.

## I. The Committee's Appeal

### A. The Violation of the Agreement

■ Because the arbitration award resulted from grievance arbitration, the Committee's application to vacate the award properly proceeded under the Uniform Arbitration Act, 14 M.R.S.A. §§ 5927–5949. *See Board of Directors of Maine School Administrative District No. 75 v. Merrymeeting Educators' Association*, Me., 354 A.2d 169, 169 (1976).

Prudence Grant began teaching English at Lisbon High School in 1965. During the 1970's, Grant was active in Association activities, and acted as the Association's chief negotiator during four contract negotiations. These included negotiations in the spring of 1979 in which the five members of the Committee participated as members of the Committee's negotiating team. Grant testified before the arbitrator that during those negotiations she offended various Committee members with her vivid language and "unsubtle" behavior; a specific

instance to which Grant testified was a lecture she gave to one Committee member who was allegedly rudely "snapping" chewing gum during a negotiating session.

In May 1979, the annual budget for teachers' salaries was cut by approximately $52,000 below the Committee's recommended level at a Town Meeting. In response, after extensive discussions (including public hearings) and deliberations, the Committee voted on May 22 to eliminate six teaching positions, including one English position. There were then three English teachers in the Lisbon schools: Grant, with 14 years seniority in the Lisbon schools; Emily Jones, with 8 years seniority; and Pauline Higgins, with 7 years seniority.

On May 29, 1979, the Committee met to determine which teachers' contracts to terminate. In executive session, Lisbon High School's principal recommended that Higgins' contract be terminated; while evaluating the English teachers the principal described Grant as an excellent teacher. Committee member Ralph Garnett testified before the arbitrator that several members asked what the consequences would be if Grant's contract were terminated. He also recalled that one member stated that this might be a chance "to get [Grant]."

Returning to public session, the Committee proceeded to vote. A motion to terminate Higgins' contract failed by a 2–3 vote; without discussion a motion to terminate Grant's contract passed on a 3–2 vote. Garnett walked out of the meeting in protest, and visited Grant later that evening.

Grant testified that Garnett told her that the vote was in part a reprisal for her behavior during the 1979 contract negotiations, mentioning specifically that the gumsnapping incident had angered two members who voted to terminate her contract, while Grant's language during negotiations had upset the member who cast the third vote to terminate her contract.

Pursuant to the Agreement, Grant filed a grievance alleging, *inter alia*, that her termination violated article IV(A) of the Agreement, which states in part:

the Committee undertakes and agrees that it shall not directly or indirectly discourage or deprive or coerce any teacher in the enjoyment of any rights conferred under [the Municipal Public Employees Labor Relations Law, 26 M.R.S.A. §§ 961–972] or other laws of Maine or the Constitution of Maine or the United States Constitution; that it shall not discriminate against any teacher with respect to hours, wages, or any terms or conditions of employment by reason of her or his membership in the Association and its affiliate, her or his participation in any activities of the Association and its affiliates, collective agreements, complaint, or proceeding under this agreement or otherwise with respect to any terms or conditions of employment.

Finding that "the Committee's selection of Grant for termination was at least in part motivated by displeasure with her Association activities," the arbitrator ruled that Grant's termination violated article IV(A).[1]

---

1. Article XXV of the agreement provides that prior to terminating the employment of any teacher as the result of the elimination of teaching positions, the Association shall be entitled to make recommendations as to which teachers to terminate, and "[t]he recommendation of the Association shall be given serious consideration by the Committee but shall not be binding upon it." The arbitrator agreed with the Association's claim that the Committee failed to give "serious consideration" to the Association's recommendation (that the teacher with the least seniority, *i.e.*, Higgins, be terminated) in violation of both article XXV and article IV(C) (teacher shall not be terminated without just cause).

The Committee contends that 20 MR.S.A. § 161(5) precludes the Committee from sharing its responsibility of selecting which teacher's contract to terminate where changes in local conditions warrant the elimination of a teaching position. Therefore, the Committee concludes, the above-described claim was not arbitrable.

The Association contends that the amendment of section 161(5) enacted in P.L. 1975, c. 723, § 2, permitting just cause for dismissal or nonrenewal to be a negotiable item in a collective bargaining agreement, extends to contract terminations. Moreover, even assuming the Committee correctly interprets section 161(5), the Association argues that article XXV merely binds the Committee to follow certain proce-

The Committee concedes the arbitrability under article IV(A) of Grant's claim that the Committee's decision to terminate her contract was motivated by anti-union animus. *See Westbrook School Committee v. Westbrook Teachers Association*, Me., 404 A.2d 204, 207–08 (1979). It argues, however, that the arbitrator exceeded his powers: (1) by applying an "in part" test (*i.e.*, whether a particular act was motivated in part by an unlawful purpose) rather than a "dominant motive" or "but for" test in determining whether the Committee's action was motivated by anti-union animus; (2) by improperly placing upon the Committee the burden of rebutting the inference of unlawful motive drawn by the arbitrator; and (3) in that his findings of fact were clearly erroneous.

■ Title 14 M.R.S.A. § 5938(1)(C) provides that the court shall vacate an award where the arbitrator exceeded his powers. A narrow standard of review governs this determination; "judicial deference to the arbitrator's interpretation of the agreement is dictated by the need for finality in arbitration awards, a realization of the complexity of labor relations and the expertise of the arbitrator, and the principle that the parties have bargained for the arbitrator's construction of the contract." *Board of School Directors, Maine School Administrative District No. 52 v. Tri-Town Teachers Association*, Me., 412 A.2d 990, 992–93 (1980).

■ In the instant case, the arbitrator's interpretation of article IV(A) of the Agreement as proscribing any discrimination against a teacher with respect to terms of employment motivated *in part* by the teacher's Association activities is a rational construction of the contract. "We cannot conclude that all reasonable minds would agree that the ultimate construction of the contract was impossible under a fair interpretation of the bargaining agreement."[2] *Maine State Employees Association v. State of Maine, Department of Defense and Veterans' Services*, Me., 436 A.2d 394, 398 (1981). Therefore, the arbitrator's application of an "in part" test was not in excess of his powers.

■ As for the Committee's second claim of error, the arbitrator stated that from the evidence presented to him he inferred that the Committee's selection of Grant for termination was in part motivated by displeasure with her Association activities, and that the Committee failed to rebut this inference. Thus, the arbitrator did not shift the burden of proof. Once the Association produced evidence sufficient to warrant a finding that the Committee had violated article IV(A), the Committee was liable to being found in violation if the arbitrator believed the evidence. This is not a *shifting* of the burden of proof, but rather the normal consequence of a party carrying its burden of proof.[3] *See State v. Sockbeson*, Me., 430 A.2d 1105, 1106 n.1 (1981).

dures precedent which do not infringe upon its authority to alone choose which teacher's contract to terminate. *Compare School Committee of Danvers v. Tyman*, 372 Mass. 106, 110, 360 N.E.2d 877, 881 (1977) *with Illinois Education Ass'n v. Board of Education*, 62 Ill.2d 127, 129, 340 N.E.2d 7, 9 (1975).

In light of our disposition of the Association's claim under article IV(A), we do not reach these issues, and express no. opinion thereon.

2. Article IV(A) is similar to 26 M.R.S.A. § 964(1)(B), which prohibits public employers from "[e]ncouraging or discouraging membership in any employee organization by discrimination in regard to hire or tenure of employment or any term or condition of employment." We have recently noted that the Maine Labor Relations Board has apparently adopted the "in part" test under that statute. *Baker Bus Ser-*

*vice v. Keith*, Me., 428 A.2d 55, 56 (1981). We express no opinion as to whether the "in part" test should be adopted; nor do we contend that an arbitrator is bound by interpretations of analogous language by the Labor Relations Board. Rather, we merely point to the Board's action as evidence that the arbitrator's construction of the Agreement was rational.

3. Thus, we need not decide whether by placing the burden of proof upon the Committee the arbitrator would have thereby exceeded his powers. *See McGovern v. Middlesex Mutual Insurance Co.*, 359 Mass. 443, 445, 269 N.E.2d 445, 447 (1971) (court will not vacate arbitration award if arbitrator put burden of proof upon wrong party) and 14 M.R.S.A. § 5947 (Uniform Arbitration Act to be construed to effectuate its general purpose to make uniform the law of those states which enact it).

Finally, assuming, without deciding, that an arbitrator may be found to have exceeded his powers by making erroneous findings of fact, here the arbitrator's factual finding that the Committee acted in part because of Grant's Association activities is supported by competent evidence in the record, including the testimony of Grant and Committee member Garnett.[4]

### B. *The Remedy*

The arbitrator ordered that Grant be reinstated, and compensated for all lost wages and benefits from the date of termination through the date of reinstatement, less the amount she earned from daytime weekday employment, plus 10 percent interest per annum. The Committee challenges *only* the amount by which lost wages and benefits is to be reduced, arguing that the arbitrator exceeded his powers by limiting mitigation to daytime weekday earnings, rather than ordering mitigation by all earnings. The Committee further contends that the record provides no basis upon which to ascertain the amount to be paid Grant.

If the remedy fashioned by the arbitrator has been rationally derived from the Agreement, it will be upheld on review. *Kittery Teachers Association v. Kittery School Committee*, Me., 413 A.2d 534, 537 (1980). The Agreement itself need not specify what is the appropriate remedy, *id.*; "[t]he draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency." *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960) *quoted in Westbrook School Committee v. Westbrook Teachers Association*, Me., 404 A.2d 204, 209 n.9 (1979). Nor was it necessary, as the Committee contends, that the arbitrator explain the basis for his selection of the particular remedy. "Arbitrators have no obligation to the court to give their reasons for an award." *Enterprise Wheel and Car Corp.*, 363 U.S. at 598, 80 S.Ct. at 1361 *quoted in Maine State Employees Association v. State of Maine, Department of Defense and Veterans' Services*, Me., 436 A.2d 394, 398 n.3 (1981).

The Agreement provides that the purpose of the grievance procedure is to secure "equitable solutions" to problems which arise. The arbitrator's award is such a solution; it attempts to put Grant in the same position she would have been in had the Committee not terminated her contract in violation of the Agreement. Had she continued teaching, she would have been unable to otherwise earn money during daytime, weekday hours. Hence, the arbitrator deducted such earnings from the lost compensation which he awarded to Grant. It matters not whether a court either would or could grant similar relief.[5] 14 M.R.S.A. § 5938(1). We cannot say that the relief granted was not rationally derived from the Agreement.

The arbitrator did not determine the actual amount due to Grant, nor would he be able to finally determine such amount until the date upon which Grant is reinstated. The determination of the amount due will involve resolution of questions of fact con-

---

4. We do not decide under what circumstances, if any, an arbitrator who makes erroneous findings of fact thereby exceeds his powers. See *Grudem Brothers Co. v. Great Western Piping Corp.*, 297 Minn. 313, 315, 213 N.W.2d 920, 922–23 (1973) (court will not overturn arbitrator's determination of question of fact even if it believes the arbitrator reached an incorrect conclusion) and 14 M.R.S.A. § 5947 (Uniform Arbitration Act to be construed to effectuate its general purpose to make uniform the law of those states which enact it).

5. We note, however, that it has been stated that:

when an employee who has been discharged in breach of an employment contract can find other similar employment in the same community, the wages which were earned, or could have been earned, in the similar employment, should be deducted from the employee's recovery only if the taking of the second job would not have been possible if employment under the first contract continued; if the employee could have performed both jobs, there should be no reduction in the damages recovered from the defaulting party for the wages which were earned or could have been earned.

22 Am.Jur.2d, *Damages* § 34 (1965).

cerning which the record appears to contain no evidence, and will involve a delineation of the scope of "daytime weekday employment." Thus, the determination will require much more than the mere carrying out of a ministerial act in accordance with a clear formula. *Cf. Maine Central Railroad Co. v. Bangor & Aroostook Railroad Co.*, Me., 395 A.2d 1107, 1121 (1978).

■■■ Upon the granting of an order confirming an arbitration award, judgment shall be entered in conformity therewith and be enforced as any other judgment. 14 M.R.S.A. § 5940. It is a fundamental rule that a judgment must be sufficiently clear and definite so that it is susceptible of enforcement, and those called upon to understand and obey it must not be misled nor called upon to pay more than is due. *See Bickford v. Flannery*, 70 Me. 106, 113 (1879); 46 Am.Jur.2d, *Judgments* § 67 (1969). We have in the past remanded a judgment to the Superior Court where a plaintiff was awarded back pay but the record failed to provide a basis upon which damages could be determined. *Sevigny v. City of Biddeford*, Me., 344 A.2d 34, 41 (1975).

■■■ The Uniform Arbitration Act provides for reference of an arbitration award back to the arbitrator where the award requires clarification. 14 M.R.S.A. § 5935 (1980); *see University of Alaska v. Modern Construction, Inc.*, 522 P.2d 1132, 1136 (Alaska 1974). Reference is proper for a determination by the arbitrator of the actual amount of back pay, as adjusted, which is due the grievant. *See School Board of Seminole County v. McGregor*, 383 So.2d 694, 695 (Fla.App.1980); *cf. Enterprise Wheel and Car Corp.*, 363 U.S. at 599, 80 S.Ct. at 1362. It is not necessary that the entire award be referred back, however; the finding that the Committee violated the Agreement, and the order of immediate reinstatement may be confirmed and enforced. *See School Board of Seminole County*, 383 So.2d at 695. Severing the award to allow prompt enforcement of the

reinstatement order while providing for a definite determination *by the arbitrator* of back pay due is in accord with the principle that the parties bargained for an award of an arbitrator, not of a court, *see Maine State Employees Association v. State of Maine, Department of Defense and Veterans' Services*, Me., 436 A.2d 394, 397 (1981), and furthers "the manifest purpose of grievance arbitration as a *final, speedy*, inexpensive dispute settlement mechanism." *Board of School Directors, Maine School Administrative District No. 52 v. Tri-Town Teachers Association*, Me., 412 A.2d 990, 994 (1980) (emphasis added). Therefore, we affirm the judgment below in part, but vacate in part and remand to the Superior Court for submission to the arbitrator under such conditions as the Superior Court may order pursuant to 14 M.R.S.A. § 5935 for clarification of the back-pay award in accordance with this opinion, without the necessity that the Superior Court retain jurisdiction thereof.

Finally, because we addressed only the article IV(A) violation of the Agreement,[6] we affirm only that part of the judgment which confirms the arbitrator's determination of an article IV(A) violation and the award of immediate reinstatement based thereon. That part of the judgment is now subject to immediate enforcement.

## II. *The Association's Appeal*

■■■ The judgment entered by the Superior Court in conformity with the arbitration award is enforced as is any other judgment or decree. 14 M.R.S.A. § 5940. Rule 62 of the Maine Rules of Civil Procedure provides, with other exceptions not here pertinent, that the taking of an appeal from a judgment shall operate as a stay of execution upon the judgment during the pendency of the appeal except that, unless otherwise ordered by the court, a final judgment in an action for an injunction shall not be stayed during the pendency of an appeal.

The Association contends that the judgment below ordering reinstatement is in the nature of an injunction, and therefore that

6. *See* note 1, *supra.*

judgment was not automatically stayed pending appeal. Thus, the Association argues, the Superior Court erred in dismissing the Association's complaint [7] seeking to hold the Committee in contempt for failing to reinstate Grant.

We find it significant that the pertinent exception in Rule 62(a) states that a final judgment in an *action* for an injunction shall not be stayed pending an appeal unless otherwise ordered by the court. While the Association focuses its attention upon the similarities of the judgment ordering reinstatement and an injunction, we are impressed with the dissimilarities between the action to confirm the arbitration award and an action for an injunction.

 " 'The writ of injunction is declared to be an extraordinary remedy only to be granted with utmost caution when justice urgently demands it and the remedies at law fail to meet the requirements of the case.' " *Bar Harbor Banking & Trust Co. v. Alexander,* Me., 411 A.2d 74, 79 (1980) *quoting* R. Whitehouse, *Equity Jurisdiction* § 563 (1900). A prerequisite to obtaining injunctive relief is proof of irreparable injury. *Bar Harbor Banking.* Thus, if an injunction is granted, the court will already have determined that irreparable injury will result absent injunctive relief. An automatic stay pending appeal might result in irreparable injury to the plaintiff, or, more likely, it might force the plaintiff to return to court to prove again the likelihood of irreparable injury. Because the plaintiff has already shown during trial that irreparable injury will result absent injunctive relief, it is reasonable to put the burden upon the defendant after entry of judgment to show why a stay should be granted pending appeal.

No similar showing of irreparable injury is necessary in an action to confirm an arbitration award. Often the Superior Court will have been presented with little or no evidence, having been asked merely to determine whether the arbitration award is rationally derived from the contract. Adoption of the Association's interpretation of Rule 62 would inject an element of doubt into every case where the relief granted at all resembles injunctive relief, forcing the appellant to apply to the court for a stay (which would likely require an evidentiary hearing to enable the court to reach an informed decision), or risk being found in contempt, or immediately carry out the judgment. A straight-forward reading of Rule 62 does not support the Association's position; we find that the general policy of providing an unsuccessful defendant the opportunity to appeal unharassed by enforcement of the judgment should here prevail. *See* 2 Field, McKusick and Wroth, *Maine Civil Practice* § 62.1 (2d ed. 1970).

The entry is:

In CV–81–261, judgment of dismissal is affirmed.

In CV–81–44, that part of the Superior Court judgment confirming the arbitrator's determination that Lisbon School Committee violated article IV(A) of the collective bargaining agreement and the award of immediate reinstatement based thereon is affirmed. We vacate and remand to the Superior Court that part of the judgment for immediate compensation to Prudence Grant of "all lost wages and benefits from the date of termination through the date of reinstatement, less the amount she earned during that period from daytime weekday employment, plus 10% interest per annum on the net amount owing to her" with instructions to submit that portion of the award to the arbitrator pursuant to 14 M.R.S.A. § 5935 for clarification in accordance with the opinion herein, without the neces-

---

**7.** The Committee objects to the Association's complaint because neither Grant nor the Association complained *under oath* as required to initiate a contempt action under 14 M.R.S.A. § 252. Assuming that allegation to be correct, we have recently reaffirmed that section 252 does not delineate exclusive or exhaustive com-

pass of the inherent contempt powers of a court. *Elliot v. Elliot,* Me., 431 A.2d 55, 56 (1981). The inherent contempt powers of the Superior Court were available to enforce its judgment ordering reinstatement. *See id.* at 56–57.

sity that the Superior Court retain jurisdiction thereof.

All concurring.