CAPE ELIZABETH SCHOOL BOARD

v.

CAPE ELIZABETH TEACHERS
ASSOCIATION.

Supreme Judicial Court of Maine.

Argued Sept. 20, 1982.
Decided April 19, 1983.

Jensen, Baird, Gardner & Henry, Merton G. Henry (orally), Nicholas S. Nadzo, Michael A. Nelson, Portland, for plaintiff.

Sunenblick, Fontaine & Reben, Howard T. Reben (orally), Portland, for defendant.

Before GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

GODFREY, Justice.

The Cape Elizabeth School Board ("Board") appeals from a decision of the Superior Court confirming an arbitrator's award in favor of the Cape Elizabeth Teachers' Association ("Association"). The award reinstated Association member Martin H. Burke to his fourth-grade teaching position and awarded him back pay. The questions on appeal are (1) whether the Superior Court erred in finding that the dispute over Burke's dismissal was arbitrable under the collective bargaining agreement ("Contract") between the Board and the Association; (2) whether, if the dispute was arbitrable under the Contract, the Superior Court erred in finding that 20 M.R.S.A. § 161 authorizes the review of a statutory dismissal of a teacher under 20 M.R.S.A. § 473(4) through grievance arbitration; (3) whether the review of a statutory dismissal of a teacher under 20 M.R.S.A. § 473(4) through grievance arbitration is invalid as an unconstitutional delegation of governmental power; and (4) whether the Superior Court erred in upholding the arbitrator's decision on the merits. Since we answer each question in the negative, we affirm the judgment.

On December 20, 1977, Burke spanked a recalcitrant pupil. At the time, Burke had continuing-contract status, with over ten years' teaching experience in Cape Eliza-

beth elementary schools.[1] After the incident, Dr. Bruce Thurlow, the Cape Elizabeth Superintendent of Schools, suspended Burke with pay, investigated the incident, and recommended the Board conduct a hearing to determine whether to dismiss Burke. After notice to Burke and a public hearing, the Board concluded that Burke was, in fact, unfit to teach and that his services were unprofitable to the school. The Board issued him a "certificate of dismissal" pursuant to 20 M.R.S.A. § 473(4).[2]

The association filed a grievance on behalf of Burke, alleging that the dismissal was without just cause. After the Board rejected the grievance, the Association, in late February, 1978, submitted Burke's dismissal to grievance arbitration.[3] The arbitrator, Alfonso D'Apuzzo, issued an interim award holding that the dismissal of a continuing-contract teacher pursuant to 20 M.R.S.A. § 473(4) is arbitrable under the Contract.[4] After a full hearing, extending over four days, the arbitrator decided on May 14, 1981, that the dismissal was in violation of the Contract and ordered reinstatement and back pay.

In June, 1981, the Board filed a motion in Superior Court, Cumberland County, to vacate the arbitration award pursuant to 14

M.R.S.A. § 5938, and the Association filed a cross-motion to confirm the award pursuant to 14 M.R.S.A. § 5937. The Board appeals the Superior Court's judgment confirming the award and denying the motion to vacate.

### I. Substantive arbitrability

■ The Uniform Arbitration Act requires a reviewing court to vacate an award if the parties did not agree to submit the dispute to arbitration. 14 M.R.S.A. § 5938(1)(E) (1980).[5] This is the question of substantive arbitrability. The final decision on substantive arbitrability is the function of the court, not of the arbitrator. *Westbrook School Committee v. Westbrook Teachers Association,* 404 A.2d 204, 207 (Me. 1979). The question before us is whether the Association and the Board intended to submit statutory dismissals under 20 M.R.S.A. § 473(4) (1964) ("§ 473(4)") to grievance arbitration.

■ As we explained in *Westbrook,* there is a broad presumption under Maine law favoring substantive arbitrability:

[T]he Maine legislature's strong policy favoring arbitration dictates a conclusion that the dispute has been subjected to arbitration if the parties have generally

**1.** Under 20 M.R.S.A. § 161(5) (Supp.1982), a teacher gains continuing-contract status after a probationary period not exceeding 2 years.

**2.** 20 M.R.S.A. § 473(4) (1965) provides, in pertinent part, as follows:

After investigation, due notice of hearing, and hearing thereon, they [superintending school committees and school directors] shall dismiss any teacher, although having the requisite certificate, who proves unfit to teach or whose services they deem unprofitable to the school; and give to said teacher a certificate of dismissal and of the reasons therefor, a copy of which they shall retain.

**3.** In March 1978, the Board filed a complaint in Superior Court for an order staying the arbitration and for a declaratory judgment that Burke's dismissal was not arbitrable. After the court found in favor of the Association, the Board proceeded to arbitration under protest and appealed the decision to the Law Court. In *Cape Elizabeth School Board v. Cape Elizabeth Teachers Association,* 435 A.2d 1381 (Me.1981), this Court denied the appeal and remanded the

case to the Superior Court for dismissal without reaching the merits, on the ground that the Declaratory Judgment Act is an inappropriate vehicle for testing arbitrability.

**4.** The arbitrator also decided in the interim award that: (1) the admission of the transcripts of testimony taken at the Board's dismissal hearing would not foreclose the repetition of that testimony at the hearing later to be held before the arbitrator; and (2) the burden of proof at the arbitrator's hearing would lie with the Board.

**5.** 14 M.R.S.A. § 5938(1)(E) provides:

1. *Vacating award.* Upon application of a party, the court shall vacate an award where:

. . . .

E. There was *no arbitration agreement* and the issue was not adversely determined in proceedings under section 5928 and the party did not participate in the arbitration hearing without raising the objection . . . .

agreed to arbitrate disputes and if 'the party seeking arbitration is making a claim which, *on its face,* is governed by the collective bargaining contract.' .... By an alternative formulation it has been held that a court will find a dispute arbitrable 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' 404 A.2d 207–08 (footnotes and citations omitted). In view of that policy, the Superior Court correctly ruled that the parties intended the dispute to be arbitrable.

The Contract shows clearly that the parties have agreed, in general, to arbitrate disputes. It includes a general agreement to submit to arbitration any grievance still unresolved after the first three formal levels of grievance procedure. Section 5–1–1 defines a grievance as "a difference between the administration and one or more teachers and/or the Association involving an alleged violation, misinterpretation or misapplication of any rule, regulation or policy of the Cape Elizabeth public schools."

Burke's claim arising from his statutory dismissal is one that is on its face governed by the Contract. Section 5–2–6 specifically provides: "In a grievance involving the discharge of a teacher [on][6] continuing contract or the nonrenewal of a continuing contract without just cause, the decision of the arbitrator shall be final and binding on both parties."

The Board argues that a § 473(4) dismissal cannot be a "grievance" under section

5–1–1, allowing arbitration, because such a dismissal must be based on statutory criteria rather than "an alleged violation ... of any rule, regulation or policy of the Cape Elizabeth Schools." That argument, however, neglects the overlap between the § 473(4) criteria—unfitness to teach and unprofitability of services to the school—and violations of Cape Elizabeth School policies. As the Board itself stated in its § 473(4) certificate of dismissal, the spanking incident—the event that triggered the proceedings leading to Burke's dismissal—was "contrary to the policies of the Cape Elizabeth School Board."

## II. *Effect of 20 M.R.S.A. § 161(5)*

■ The next question is whether a school board may make its statutory authority to dismiss nonprobationary teachers subject to binding grievance arbitration. The question involves the interplay among three statutes, 20 M.R.S.A. § 473(4), 20 M.R.S.A. § 161(5) (Pamph.1982), and 26 M.R.S.A. ch. 9–A (§§ 961–974) (1974 & Supp.1982). As noted above,[7] section 473(4) requires school boards to dismiss nonprobationary teachers who prove unfit to teach or whose services they deem unprofitable to the school. Section 161(5) authorizes superintendents not to renew the expired contracts of nonprobationary teachers. Section 161(5), as amended in 1976, also provides: "Just cause for dismissal or nonrenewal may be a negotiable item in accordance with the procedures set forth in Title 26, c. 9–A, for teachers who have served beyond the probationary period." P.L.1975, ch. 723, § 2.[8] Title 26, ch. 9–A, known as the Mu-

---

**6.** Section 5–2–6 as written refers to the discharge of a teacher *or* continuing contract. Use of the word "or" is apparently a typographic error, and the parties have proceeded on the assumption that the section refers to the discharge of a teacher *on* continuing contract.

**7.** *See supra* note 2.

**8.** 20 M.R.S.A. § 161(5) (Pamph.1982) provides, in part, as follows:

A superintendent of schools shall have the following powers and duties:

. . . .

5. He shall nominate all teachers, subject to such regulations governing salaries and the qualifications of teachers as the school committee or school directors shall make, and upon the approval of nominations by said committee or directors, he may employ teachers so nominated and approved for such terms as he may deem proper, subject to the approval of the school committee or school directors. After a probationary period of not to exceed 2 years, subsequent contracts of duly certified teachers shall be not for less than 2 years. Unless a duly certified teacher receives written notice to the contrary at

nicipal Public Employees Labor Relations Law, provides for collective bargaining, including arbitration, between municipalities and their employees. 26 M.R.S.A., ch. 9–A.

In 1975, the Superior Court, in a decision later affirmed by the Law Court in *Superintending School Committee v. Winslow Education Association,* 363 A.2d 229 (Me.1976), held that a school board may not be required by interest arbitration to accept "just cause" and grievance arbitration provisions in collective bargaining agreements pertaining to § 161(5) nonrenewals and § 473(4) dismissals. The legislature responded to the Superior Court's holding by enacting the 1976 amendment to § 161(5). *See* 3 Legis.Rec. 579–80 (1976) (statement of Sen. Katz); 3 Legis.Rec. 635 (1976) (statement of Rep. Mitchell); 3 Legis.Rec. 946 (1976) (statement of Rep. Garsoe).

This Court has never decided whether § 161(5), as amended, permits school boards voluntarily to include in their collective bargaining agreements provisions for binding arbitration of § 473(4) dismissals. *See Churchill v. School Administrative District No. 49 Teachers Association,* 380 A.2d 186, 194 n. 10 (Me.1977). Absent the amendment, school boards would probably lack statutory authority to subject § 473(4) dismissals to review by arbitration. As we said in *Winslow,* a pre-amendment case,[9] the language of § 473(4) "demonstrates that, at least as regards dismissal, the legislature vested sole authority in the school committee, subject only to judicial review."

*Winslow,* 363 A.2d at 234; *cf. Board of Directors of Maine School Administrative District No. 36 v. Maine School Administrative District No. 36 Teachers Association,* 428 A.2d 419 (Me.1981) (school board may not make its statutory authority over hiring teachers subject to grievance arbitration). However, there can be no doubt that the 1976 amendment to § 161(5) empowers school committees and teacher associations to enter voluntarily into a binding, "just cause" grievance arbitration provision concerning dismissals and nonrenewals. *Winslow,* 363 A.2d at 231 n. 3 (dictum).

The 1976 amendment to § 161(5) does not indicate in so many words that it was intended to amend a school board's authority under § 473(4) to dismiss unfit teachers. The Board contends that the 1976 amendment should be read to permit grievance arbitration of § 161(5) nonrenewals but not § 473(4) dismissals—in other words, that the 1976 amendment should not be construed to amend § 473(4) by implication. We disagree. In the context of the entire amendment, the word "dismissal" can refer only to statutory dismissal under § 473(4). To follow the Board's interpretation would require, in effect, total disregard of that word in the amendment. Besides conflicting with the plain language of the amendment, such a reading would be unsupported by the legislative history of the measure. During the progress of the amendment through the legislature, most of its friends and foes alike seemed to think it would

least 6 months before the terminal date of the contract, the contract shall be extended automatically for one year and similarly in subsequent years although the right to an extension for a longer period of time through a new contract is specifically reserved to the contracting parties. *Just cause for dismissal or nonrenewal may be a negotiable item in accordance with the procedure set forth in Title 26, ch. 9–A, for teachers who have served beyond the probationary period.* After a probationary period of 2 years, any teacher, who receives notice in accordance with this section that his contract is not going to be renewed, may during the 15 days following such notification request a hearing with the school committee or governing board. He may request reasons. The hearing shall be private, except by mutual consent and except that either or both parties may be represented by counsel. Such hearing must be granted within 30 days of the receipt of the teacher's request.... (emphasis supplied).

This subsection has been repealed, effective July 1, 1983, by P.L.1981, ch. 693, § 1; its provisions have been substantially reenacted as 20–A M.R.S.A. § 13201 (Pamph.1983), effective July 1, 1983.

9. The amendment to § 161(5) took effect after the *Winslow* appeal was filed. The Law Court in *Winslow* limited its holding to pre-amendment law. 363 A.2d at 231 n. 2.

apply to dismissals as well as nonrenewals, see, e.g., 3 Legis.Rec. 609, 610, 932 (1976) (statements of Sen. Trotzky); 3 Legis.Rec. 637, 946 (1976) (statements of Rep. Garsoe). But see 3 Legis.Rec. 947 (1976) (statement of Rep. Bagley).

We are aware of the peculiarity of the dual system the legislature has created for review of § 473(4) dismissals. Under M.R. Civ.P. 80B, a discharged teacher may seek review in the Superior Court on the ground that the school board incorrectly applied the unfitness and unprofitability criteria of § 473(4). Alternatively, the teacher may bypass an 80B appeal and submit the dismissal to binding grievance arbitration when such arbitration is provided by a collective bargaining agreement, at least where the Board has entered into the agreement voluntarily. If the dismissal goes to arbitration, the arbitrator determines whether the school board had "just cause" to dismiss—a standard not identical to the criteria of § 473(4). Moreover, the arbitration route may well require two complete evidentiary hearings, one conducted by the school board, as required by § 473(4), and a second conducted by the arbitrator. Nevertheless, it is not our role to rewrite the statute where its meaning is plain. Here, the amendment of § 161(5) clearly permitted the Board to agree voluntarily to submit § 473(4) dismissals to binding grievance arbitration.[10]

## III. Constitutionality

The Board contends that grievance arbitration of § 473(4) dismissals, even if authorized by statute, violates article I, section 2 of the Maine Constitution[11] because it delegates a fundamental governmental function, dismissal of unfit teachers, to politically unaccountable ad hoc arbitrators.

10. We express no opinion whether a school board may be forced by interest arbitration to make its § 161(5) nonrenewals and § 473(4) dismissals subject to binding grievance arbitration.

11. Article I, section 2 of the Maine Constitution provides:

In City of Biddeford v. Biddeford Teachers Association, 304 A.2d 387 (Me.1973), this Court held unanimously that the Municipal Employees Labor Relations Law is not unconstitutional merely because it permits school boards, in collective bargaining, to delegate part of the governmental authority traditionally exercised by them to ad hoc private arbitrators. Although the decision did not specifically address grievance arbitration of § 473(4) dismissals, the opinion did list § 473(4) dismissals among the responsibilities traditionally exercised by local school boards. 304 A.2d at 392 n. 8. The Biddeford Court divided evenly on whether the Municipal Public Employees Labor Relations Law provides adequate safeguards and standards against unfair and arbitrary decisions by the arbitrators. A later decision, Superintending School Committee of Bangor v. Bangor Education Association, 433 A.2d 383 (Me.1981), partly answering the question left unresolved in Biddeford, found sufficient safeguards and standards within the statute to support an interest-arbitration award limiting the school committee's authority to subcontract custodial work.

The Board attempts to sidestep the authority of Biddeford and Bangor. It argues, first, that "just cause" is a vague standard which does little to restrain the arbitrator's discretion. Second, it dismisses Bangor as inapposite because § 473(4) dismissals, unlike contract terms relating to school custodial work, go to the heart of the process of education.

The Board's arguments disregard the distinction between grievance and interest arbitration. The delegation doctrine derives from the contract theory of government, under which consent is the only legitimate basis for the exercise of the government's

All power is inherent in the people; all free governments are founded in their authority and instituted for their benefit; they have therefore an unalienable and indefeasible right to institute government, and to alter, reform, or totally change the same, when their safety and happiness require it.

coercive power. Stewart, *The Reformation of American Administrative Law,* 88 Harv. L.Rev. 1667, 1672 (1975). According to that theory, discretionary power is, in effect, political power which must be limited to the politically responsible organs of government. *Id.* at 1694; *see Biddeford,* 304 A.2d at 404 (Wernick, J.); L. Tribe, *American Constitutional Law* 286–87 (1978).[12] The doctrine has been developed largely in relation to state and federal exercises of the police power to regulate private personal and property rights.[13] In the area of teacher-contract disputes, the government acts in a different role, as "an 'employer' of 'employees' in the 'business' of providing essential services to the public." *Biddeford,* 304 A.2d at 403 (Wernick, J.). In addition, grievance arbitration differs from the more common sort of delegation in that arbitrators are private individuals, not governmental administrative agencies.[14]

■ The distinction between interest arbitration and grievance arbitration under the delegation doctrine is significant. As the California Supreme Court explained in confirming a grievance arbitrator's award that reinstated a discharged policeman,

The power to set the terms and conditions of public employment is broader and more intrusive upon the functions of city government than the arbitrator's authority in this case to resolve an individual grievance. Grievance arbitration does not involve the making of general public policy. Instead, the arbitrator's role is confined to interpreting and applying terms which the employer itself has created or agreed to and which it is capable of making more or less precise.

*Taylor v. Crane,* 24 Cal.3d 442, 453, 595 P.2d 129, 136, 155 Cal.Rptr. 695, 701 (1979).[15] The hazard of interest arbitration is that it may insulate, from accountability to the public, controversial policy choices—such as spending that results in higher taxes. *See Dearborn Fire Fighters Union v. City of Dearborn,* 394 Mich. 229, 257, 231 N.W.2d 226, 235–36 (1975) (Levin, J.). That is why interest arbitration is a valid delegation only if accompanied by adequate standards or safeguards to protect against unfair and arbitrary decisions. *See Bangor,* 433 A.2d at 387.

■ Grievance arbitration in the case before us does not present a similar risk of policy making without accountability. The Board, not the arbitrator, by voluntarily agreeing to arbitration of dismissals, established pursuant to statute the standard of just cause for dismissal of non-probationary Cape Elizabeth teachers. Whatever policy decisions that standard embodies were made, not by the arbitrator, but by the Board in accordance with legislation. The arbitrator merely interprets the contract at

---

**12.** Article I, section 2 of the Maine Constitution, declaring all power inherent in the people, reflects the contract theory of government, and hence is a textual basis for the delegation doctrine. See *supra* note 13. The separation-of-powers and due-process clauses of the Maine and United States Constitutions are also sources of the doctrine. *Bangor,* 433 A.2d at 386 n. 4.

**13.** For surveys of this traditional area of delegation law, see 1 F. Cooper, *State Administrative Law* 31–94 (1965); 1 K. Davis, *Administrative Law Treatise* §§ 3:1–3:18 (2d ed. 1978).

**14.** The classic treatment of delegation to private individuals is in Jaffe, *Law Making by Private Groups,* 51 Harv.L.Rev. 201 (1937), updated by Liebmann, *Delegation to Private Parties in American Constitutional Law,* 50 Ind. L.J. 650 (1975).

**15.** *Accord Dearborn Fire Fighters Union v. City of Dearborn,* 394 Mich. 229, 254–55, 231 N.W.2d 226, 234–35 (1975) (Levin, J.); C. Rhyne & R. Drummer, *The Law of Municipal Labor Relations* 212 (1979); Grodin, *Political Aspects of Public Sector Interest Arbitration,* 64 Calif.L.Rev. 678, 682 n. 16 (1976); Note, *The Uncertain Status of Public Sector Labor Arbitration in Colorado,* 48 U.Colo.L.Rev. 451, 462–64 (1977); *see also Biddeford,* 304 A.2d at 394–95 (recognizing the distinction between interest and grievance arbitration); *Local 1226, AFSCME v. City of Rhinelander,* 35 Wis.2d 209, 220, 151 N.W.2d 30, 36 (1967) (same). *See generally* Craver, *The Judicial Enforcement of Public Sector Grievance Arbitration,* 58 Tex.L. Rev. 329 (1980).

hand, applying the just-cause standard. In the context of grievance arbitration, "just cause" is an adequate standard. It has a generally accepted meaning in the law of the workplace. F. Elkouri & E. Elkouri, *How Arbitration Works* 612 (3d ed. 1973).

It is not sufficient that the Board now regrets agreeing to a grievance arbitration provision to which it freely assented. "[T]he surrender in collective bargaining agreements of powers granted to boards of education by statute to an arbitrator may later prove inconvenient or even disruptive of the operation of a school district. This, however, is a contingency which should have been considered at the bargaining table." *Port Washington Union Free School District v. Port Washington Teachers Association*, 45 N.Y.2d 746, 748, 380 N.E.2d 310, 311, 408 N.Y.S.2d 484, 485 (1978). Even if the Board's argument represents more than an attempt to escape the consequences of a now-unpalatable decision, we must nonetheless reject it.

The grievance arbitration of Burke's dismissal was neither an unconstitutional abdication by the Board of its authority to manage the school system nor an unconstitutional usurpation of that authority by the arbitrator.

## IV. *The Arbitrator's Award*

Even if the dispute was arbitrable under the Contract, the applicable statutes and state and federal constitutions, the Board contends the award must be vacated as arbitrary, capricious, and otherwise beyond the arbitrator's authority. Specifically, the Board criticizes (1) the arbitrator's finding that there was not just cause for Burke's dismissal; (2) the arbitrator's "refusal to consider" Burke's employment history; and (3) the award to Burke of more than one year's back pay. None of these criticisms has merit.

■ Because the award resulted from grievance arbitration, the Board's application to vacate the award properly proceeded under the Uniform Arbitration Act, 14 M.R. S.A., ch. 706 (§§ 5927–5949) (1980). *Lisbon School Committee v. Lisbon Education Association*, 438 A.2d 239, 241 (Me.1981). Unless the Board pleaded and proved a ground for vacating the award specified in § 5938(1) of that statute,[16] the Superior Court was required to confirm the award.[17] *Board of Directors of Maine School Administrative District No. 33 v. Teachers' Association of Maine School Administrative District No. 33*, 395 A.2d 461, 463 (Me.1978).

The Board's first criticism—that the arbitrator erred in finding no just cause to dismiss Burke—appears to rely on the provision of § 5938(1)(C) requiring a court to vacate an award where the arbitrator has exceeded his powers. Thus, the Board must argue that the arbitrator's finding of fact of no just cause to dismiss Burke exceeded the arbitrator's powers within the meaning of § 5938(1)(C) because it was erroneous.

16. 14 M.R.S.A. § 5938(1) (1980) provides as follows:

1. Vacating award. Upon application of a party, the court shall vacate an award where:

A. The award was procured by corruption, fraud or other undue means;

B. There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

C. The arbitrators exceeded their powers;

D. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 5931, as to prejudice substantially the rights of a party;

E. There was no arbitration agreement and the issue was not adversely determined in proceedings under section 5928 and the party did not participate in the arbitration hearing without raising the objection; or

F. The award was not made within the time fixed therefor by the agreement or, if not so fixed, within such time as the court has ordered, and the party has not waived the objection.

But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

17. Section 5939 provides grounds for modifying or correcting an award, but the Board does not appear to be proceeding under this section.

This Court has not heretofore decided whether an arbitrator "exceeds his powers" by making erroneous findings of fact. *See Lisbon,* 438 A.2d at 244 n. 4. In general, the standard of review under § 5938(1)(C) is narrow. We have held that the arbitrator's interpretation of the agreement is entitled to a high degree of judicial deference. *Board of School Directors, Maine School Administrative District No. 52 v. Tritown Teachers Association,* 412 A.2d 990, 992–93 (Me.1980). *Accord Lisbon,* 438 A.2d at 243; *Maine State Employees Association v. State Department of Defense and Veterans' Services,* 436 A.2d 394 (Me.1981); *Westbrook School Committee v. Westbrook Teachers Association,* 404 A.2d 204, 209 (Me.1979). Besides the fact that the parties have bargained for the arbitrator's construction of the Contract, we have recognized the complexity of labor relations, the expertise of the arbitrator, and the need for finality of awards. We have held also that a court may not overturn an arbitration award merely because the arbitrator erred in his interpretation of the applicable law. *School Administrative District No. 33,* 395 A.2d at 463.

■ Similar considerations apply with equal or greater force to arbitrators' findings of fact. In other jurisdictions that have adopted the Uniform Arbitration Act, error in a finding of fact by the arbitrator does not suffice as a basis for vacating an award. *E.g., Garver v. Ferguson,* 76 Ill.2d 1, 27 Ill.Dec. 773, 389 N.E.2d 1181 (1979); *School Committee of West Springfield v. Korbut,* 373 Mass. 788, 369 N.E.2d 1148 (1977) (dictum); *Trustees of the Boston & Maine Corp. v. Massachusetts Bay Transportation Authority,* 363 Mass. 386, 294 N.E.2d 340 (1973); *Grudem Brothers Co. v. Great Western Piping Corp.,* 297 Minn. 313, 213 N.W.2d 920 (1973). The desirability of national uniformity in the construction of a uniform act reinforces the reasons noted above for holding that arbitrators do not exceed their powers merely by making erroneous findings of fact. We hold that if the arbitrator erred in deciding that the Board lacked just cause for dismissal, the error cannot serve as the basis for vacating the award.[18]

■ The Board's second criticism—that the arbitrator "refused to consider" Burke's employment history—turns on 14 M.R.S.A. § 5938(1)(D), which requires a reviewing court to vacate an award where the arbitrators "refused to hear evidence material to the controversy." The Board focuses on the arbitrator's statement that Burke's employment history before the fall of 1977 has "only minimal or background importance in determining whether there was just cause to dismiss [Burke]." The arbitrator reasoned, in effect, that Burke's annual contract renewal created a clean slate for each year.

The Board does not deny that the arbitrator received all evidence proffered by the Board. Moreover, in reaching his decision, the arbitrator frequently referred to Burke's employment history. In light of those facts and the arbitrator's explanation, the Board's complaint cannot be that the arbitrator refused to hear evidence, but instead must be that the arbitrator gave insufficient weight to the evidence. If so, that is not ground under the Uniform Arbitration Act for vacating the award.

■ The Board's third criticism is that the arbitrator should not have awarded Burke more than one year's back pay. The arbitrator awarded Burke back pay from the date of dismissal, February 13, 1978, to the date of reinstatement, May 14, 1981. The Board argues that back pay should be limited to one year since it is unknown whether Burke's contract would have been renewed had he not been dismissed.

18. In *United Steel Workers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960), the Supreme Court said:

The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.

Under § 5938(1) "the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." It is enough that the remedy fashioned by the arbitrator has been rationally derived from the agreement. *Lisbon,* 438 A.2d at 244. The arbitrator could have reasoned that under this particular collective bargaining agreement, continuing contracts must be renewed in the absence of just cause for nonrenewal.

The entry is:

Judgment affirmed.

All concurring.