1997 ME 219

**SCHOOL ADMINISTRATIVE DISTRICT NO. 58**

v.

**MOUNT ABRAM TEACHERS ASSOCIATION.**

Supreme Judicial Court of Maine.

Argued Sept. 5, 1997.
Decided Nov. 19, 1997.

Donald A. Kopp (orally), Deirdre M. Smith, Drummond, Woodsum & MacMahon, Portland, for plaintiff.

Shawn C. Keenan (orally), General Counsel, Maine Education Association, South Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] School Administrative District No. 58 ("SAD # 58") appeals from the judgment entered in the Superior Court (Franklin County, *Perkins, A.R.J.*) denying its application to vacate an arbitration award. SAD # 58 argues on appeal that its educational plan for the teaching of the book *Bastard Out of Carolina* was not subject to arbitration. We agree and vacate the judgment.

## I.

[¶ 2] During the 1995–96 academic year, the superintendent of SAD # 58 received a parental complaint concerning the sexually explicit content of *Bastard Out of Carolina,* a work of fiction used in the 10th grade curriculum at Mount Abram High School. At its January 10, 1996, meeting, the Board of Directors of SAD # 58 voted to remove the book from the curriculum unless the high school developed a plan: (i) to teach the book "in conjunction with at least one other approved novel addressing similar themes," in a manner according both books equal treatment; (ii) to allow students to choose between the two books; (iii) to structure classroom instruction such that all students would feel comfortable remaining in class during the lesson; (iv) to select passages to be read aloud "with respect for differences among students"; (v) to condition curricular changes upon receipt of board approval; and (vi) to notify parents prior to teaching the book. On January 19, 1996, an English teacher filed a grievance with the high school principal, arguing that the Board's decision moved "beyond its legally recognized power to supervise curriculum into the rights of a teacher certified by the State of Maine to determine appropriate methodologies for the teaching of a work of literature." The grievance proceeded to arbitration over the objection of SAD # 58.

[¶ 3] The arbitrator acknowledged that the Board's general authority to place conditions on the use of textbooks is a management right within the meaning of Article 15.1 of

the collective bargaining agreement ("agreement") between SAD # 58 and the Mount Abram Teachers Association ("Association"). Article 15.1 states that "the determination of educational policy, the operation and management of schools, and the control, supervision and direction of the employees are vested exclusively in the Board." The arbitrator distinguished, however, between educational policy decisions and management rights decisions:

> Educational policy decisions are fundamentally right and reasonable, and must be accepted even if they impede the teachers' ability to perform. Other management rights decisions are of lesser importance, and may be tested to determine if they unreasonably impede the teachers' ability to effectively teach and present ideas.

He concluded that the conditions imposed by the Board on the teaching of *Bastard Out of Carolina* did not constitute educational policy:

> In this grievance, whether to use the Book at all is not subject to grievance and arbitration, because it is purely an educational policy matter, The conditions of its use, however, are not, because they are rules or regulations that affect 'control', 'supervision', and 'direction' of teachers, that, on balance, have a greater impact upon working conditions than upon policy-making. As with all such rules and regulations, the standard is whether they are reasonable, as they may affect the Grievant's working conditions.

Applying the reasonableness standard to the conditions imposed by the Board, the arbitrator found some of the conditions unreasonable and ordered the following modifications:

1. The treatment of the alternative novel in the curriculum shall be to the extent necessary to permit the comprehensive instruction of the lessons presented.

2. [L]essons shall be designed to minimize the number of times students may feel more comfortable removing themselves from the classroom discussion. The teacher shall discretely forewarn those stu-

dents when the discussion may be offensive to them.

3. [P]assages to be read aloud shall be chosen with respect to differences among students without severely compromising the lesson, while understanding that some students may object anyway, and wish to remove themselves from the classroom at those times.

4. The Board shall determine who shall advise parents when the Book is to be used, and how the notification shall be made.

SAD # 58 filed an application to vacate the arbitration award pursuant to 14 M.R.S.A. § 5938,[1] which the Superior Court denied. This appeal ensued.

## II.

[¶ 4] We will uphold the court's confirmation of an arbitration award unless the court "was compelled to vacate the award." *Roosa v. Tillotson,* 1997 ME 121, ¶ 2, 695 A.2d 1196, 1197; *American Fed'n of State, County, and Mun. Employees, Council 93 v. City of Portland,* 675 A.2d 100, 102 (Me. 1996). An arbitration award must be vacated if the grievance is not substantively arbitrable, i.e., is not a dispute which the parties agreed to submit to arbitration. *Roosa,* 1997 ME 121, ¶ 2, 695 A.2d at 1197; 14 M.R.S.A. § 5938(1)(E) (1980); *see Cape Elizabeth Sch. Bd. v. Cape Elizabeth Teachers Ass'n,* 459 A.2d 166, 168 (Me.1983). " 'We review the court's determination of substantive arbitrability for errors of law.' " *Roosa,* 1997 ME 121, ¶ 2, 695 A.2d at 1197 (quoting *Pelletier & Flanagan, Inc. v. Maine Court Facilities Auth.,* 673 A.2d 213, 215 (Me.1996)).

[¶ 5] The Municipal Public Employees Labor Relations Law ("MPELRL"), 26 M.R.S.A. §§ 961–974 (1988 & Supp.1996), imposes upon school boards and teachers associations the obligation

> [t]o confer and negotiate in good faith with respect to wages, hours, working conditions and contract grievance arbitration, except that by such obligation neither party shall be compelled to agree to a propos-

---

1. The Uniform Arbitration Act, 14 M.R.S.A. §§ 5927–5949 (1980), sets forth the grounds for vacating an arbitration award. 14 M.R.S.A. § 5938(1) (1980).

al or be required to make a concession and *except that public employers of teachers shall meet and consult but not negotiate with respect to educational policies;* for the purpose of this paragraph, educational policies shall not include wages, hours, working conditions or contract grievance arbitration; . . . .

26 M.R.S.A. § 965(1)(C) (1988) (emphasis added). As SAD # 58 emphasizes, this statutory provision prohibits the school district from negotiating with teachers about educational policy. Hence, educational policy decisions are not subject to the grievance and arbitration procedure. *See Board of Dir. of Maine Sch. Admin. Dist. No. 36 v. Maine Sch. Admin. Dist. No. 36 Teachers Ass'n,* 428 A.2d 419, 420 (Me.1981) (finding that a collective bargaining agreement provision that granted district teachers preferential status for vacancies could not support a grievance, because the school board could not subject its statutory authority over teacher hiring to grievance arbitration). Arbitrators must "bear in mind that ... the legislature deemed 'educational policies' to involve value choices so fundamental that binding decisions concernings [sic] them should be made essentially unilaterally and by persons directly responsible to the people. . . ." *City of Biddeford Bd. of Educ. v. Biddeford Teachers Ass'n,* 304 A.2d 387, 414 (Me.1973) (Wernick, J., concurring in part and dissenting in part).

[¶ 6] Prior to this dispute, the Board had adopted a policy to address parental complaints about curricular matters. This policy, "Public Concerns/Complaints About Instructional Resources," provides in relevant part:

> 1. That the final decision for controversial reading matter shall rest with the board after careful examination and discussion of the book or reading matter with school officials or anyone else the board may with [sic] to involve.
>
> 2. That no parent or group of parents has the right to determine the reading matter for students other than their own children.
>
> 3. The Board does, however, recognize the right of an individual parent to request

that his child not have to read a given book, provided a written request is made to the appropriate building principal.

> 4. Any parent who wishes to request reconsideration of the use of any book in the school must make such a request in writing on forms provided through building principals.

The Board's plan to condition the use of *Bastard Out of Carolina* comports with its power to make "the final decision for controversial reading matter" and constitutes the application of this power to a specific work of literature. The conditions imposed by the Board reflect value choices that the Board is authorized to make on behalf of the public it serves.

[¶ 7] We acknowledge that educational policy can affect the working conditions of teachers. We have struggled with this interaction in prior cases.[2] In this case, the conditions imposed on the teaching of *Bastard Out of Carolina* retain their identity as educational policy because these conditions reflect the responsibility of the Board for reconciling conflicts between curriculum content and the sensitivities of parents about what their children are taught. The challenged conditions are an attempt to control the impact of that content on students. Although the conditions may affect a teacher's preparation of a lesson plan, this incidental effect on teaching techniques does not transform an educational policy into teacher working conditions.

■ [¶ 8] The arbitrator erroneously found such a transformation because of the possibility of teacher discipline based on the difficulty of complying with the conditions imposed by the Board. The arbitrator reasoned as follows:

> (1) The restrictions may impinge upon the Grievant's ability to effectively teach, which may result in poor evaluations and the possibility of termination of employ-

2. *See, e.g., Biddeford Teachers Ass'n,* 304 A.2d 387 (Me.1973); *Cape Elizabeth Sch. Bd.,* 459 A.2d 166 (Me.1983).

ment for just cause pursuant to Article 3.3 of the agreement.[3]

(2) Pursuant to Article 2.2 of the agreement,[4] the reasonableness of a regulation or condition adopted by the Board must be challenged at the time it is promulgated. It could not be challenged in the just cause hearing.

The flaw in this reasoning is the arbitrator's confusion between two different grievances: (i) a facial challenge by a teacher to the reasonableness of a regulation or policy adopted by the Board, such as the grievance in this case; and (ii) a challenge by a teacher to the discipline imposed by the Board for the teacher's lack of compliance with a Board policy or regulation, based on the teacher's assertion that compliance was impractical because of the deficiencies of the policy or regulation. The grievance involving a facial challenge would have to be filed within fourteen days of the promulgation of the policy or regulation. The grievance contesting the discipline, however, would have to be filed within fourteen days of the discipline because such a grievance is a challenge to the discipline, not to the validity of the policy or regulation. An arbitrator deciding if there was just cause for discipline could consider the teacher's claim about the difficulties of compliance. SAD # 58 concedes this point.[5] The arbitrator's concern to the contrary is groundless.

The entry is:

Judgment vacated. Remanded for the entry of a judgment vacating the arbitration award.

---

**3.** Article 3.3 of the agreement provides: "[n]o continuing contract teacher shall be reprimanded in writing, suspended, non-renewed, or dismissed without just cause."

**4.** Article 2.2 of the agreement provides: "[a] grievance to be considered under this procedure must be initiated by the teacher within fourteen (14) calendar days of its occurrence, or within fourteen (14) calendar days of when the teacher should have known of its occurrence."

**5.** SAD # 58 states: "... in the event of actual discipline the reasonableness of administrative actions and rules would *at that time* be an element in determining whether 'just cause' existed for such discipline...."