ENTERED NOV 2 0 2014

STATE OF MAINE                                  SUPERIOR COURT
CUMBERLAND, ss                                        CIVIL ACTION
                                          DOCKET NO. CV-14-35
                                    TDW-CUM-5/22/2014
                                          STATE OF MAINE
                                      Cumberland, ss, Clerk's Office

REGIONAL SCHOOL UNIT NO. 5
BOARD OF DIRECTORS,                      MAY 22 2014

         Petitioner,                     **RECEIVED**

v.                                                    ORDER

COASTAL EDUCATION ASSOCIATION
MEA/NEA,

         Respondent.


Before the court is a motion by petitioner Regional School Unit No. 5 Board of

Directors (RSU No. 5) to vacate an arbitration award entered in favor of respondent

Coastal Education Association (CEA).

The arbitration award determined that RSU No. 5 was not entitled under its

collective bargaining agreement with CEA to require teachers at two elementary schools

in Freeport to be in their classrooms during the 10 minutes at the start of the school day

in order to greet and supervise the students entering the classrooms. The arbitrator's

ruling was based on the arbitrator's interpretation of Article 9(E) of the contract, which

provides:

> All educators will be in the building ten (10) minutes before
> the beginning of their defined instructional day. Educators
> will remain ten (10) minutes after the end of their defined
> instructional day, except on the last workday of the week.
> Educators recognize that they have a responsibility to be in
> their rooms and ready to start the student day at the
> beginning of each school day.

The arbitrator concluded that the above provision – by requiring only (1) that

teachers be "in the building" 10 minutes before the start of the school day and (2) that

they be "in their rooms . . . at the beginning of each school day" – did not require teachers to be in their classrooms for the 10 minutes before the beginning of the instructional day.

RSU No. 5 acknowledges that an arbitration award cannot ordinarily be vacated based on an argument that the arbitrator's interpretation of the contract was erroneous.[1] RSU No. 5 argues, however, that the issue in question involves a question of educational policy which is not subject to collective bargaining pursuant to 26 M.R.S. § 965(1)(C). See School Administrative District No. 58 v. Mt. Abram Teachers Association, 1997 ME 219 ¶ 5, 704 A.2d 349. As a result, RSU No. 5 argues, the arbitration decision and award should be vacated because the arbitrator exceeded his power. 14 M.R.S. § 5938(1)(C).

The basis of RSU No. 5's argument that issues of educational policy are not subject to arbitration is 26 M.R.S. § 965(1)(C), which provides that public employers and public employee unions are obligated to engage in collective bargaining with respect to wages, hours, working conditions and contract grievance arbitration

> except that by such obligation neither party may be compelled to agree to a proposal or be required to make a concession and except that public employers of teachers shall meet and consult but not negotiate with respect to educational policies; for the purposes of this paragraph, educational policies may not include wages, hours, working conditions, or contract grievance arbitration.

(emphasis added).

RSU No. 5 raised its contention that the dispute was not arbitrable in the proceedings before the arbitrator. See Arbitration Decision at 8.

---

[1] That has not kept the parties from arguing contract interpretation issues in their briefs. For purposes of this opinion, the court concludes that there would be absolutely no basis to disturb the arbitrator's decision on the basis of contract interpretation, which is an issue committed to the arbitrator.

2

Threshold Issues

There are two preliminary issues that need to be addressed. The first involves CEA's contentions that certain of the documents submitted by RSU No. 5 should be disregarded. First, CEA contends that RSU No. 5 cannot rely on the affidavit of Shannon Welch because RSU No. 5 is not entitled to rely on evidence that was not presented to the arbitrator. As far as the court can tell, however, the submission of affidavits is permitted in connection with motions to vacate an arbitration award. See Concord General Mutual Insurance Co. v. Northern Assurance Co., 603 A.2d 470, 472 (Me. 1992) (on a motion to vacate an arbitration award, the court has the discretion to receive evidence by affidavit, deposition, or oral testimony). In addition, based on the briefs submitted by RSU No. 5 before the arbitrator (annexed to RSU No. 5's motion to vacate), the Welch affidavit essentially reiterates evidence that RSU No. 5 in fact presented to the arbitrator. See, e.g., RSU No. 5 Post Hearing Brief dated November 7, 2013 at 12 (Ex. D to Motion to Vacate).

RSU No 5 also annexed a portion of CEA's own post-hearing arbitration brief to RSU No. 5's reply memorandum. CEA has moved to strike that brief or in the alternative to include the entire brief in the record. The motion to strike is denied; CEA's entire post hearing brief is included in the record and has been considered by the court.

The second issue to be addressed at the outset is CEA's position that, by agreeing to the inclusion of Article 9(E) in the contract, RSU No. 5 agreed to bargain on the issue of the 10 minute period before the beginning of the school day and is therefore bound by the arbitrator's decision as to the interpretation of that provision. CEA contends that even if requiring teachers to be in their classrooms to greet and supervise elementary

3

school students at the beginning of the school day is an issue of educational policy, school boards are nevertheless permitted to bargain on issues of educational policy and are subject to arbitration if they do so.

CEA cites to a 1984 decision of the Maine Labor Relations Board that supports its position. Oxford Hills Teachers Association v. MSAD No. 17, MLRB Case No. 88-13, decision issued June 16, 1989 at 27-28. However, the Law Court has ruled to the contrary. In Board of Directors of MSAD No. 36 v. MSAD No. 36 Teachers Association, 428 A.2d 419 (Me. 1981), the Law Court ruled that even though the School Board had entered into a collective bargaining agreement addressing the rights of existing teachers to apply for other vacancies, the governing statutes gave the responsibility for hiring teachers to the school superintendent. As a result, the School Board

> could not lawfully limit its statutory responsibility for choosing teachers through a collective bargaining agreement, even though entered into lawfully.

428 A.2d at 422.

The MSAD No. 36 decision was approvingly cited by the Law Court in its 1997 ruling in MSAD No. 58 v. Mount Abram Teachers Association, 1997 ME 219 ¶ 5, for the proposition that educational policy decisions, like hiring decisions, are not subject to the grievance and arbitration procedure. In that connection the Law Court noted that the Legislature had decided that issues of educational policy should not be decided by arbitrators but by school boards directly responsible to the citizens. Id., citing City of Biddeford Board of Education v. Biddeford Teachers Association, 304 A.2d 387, 414 (Me. 1973) (Wernick, J., concurring in part and dissenting in part).

As a result, if the presence of teachers in elementary school classrooms during the 10 minutes before the beginning of the school day to receive and supervise arriving

4

students is a matter of educational policy, RSU No. 5's motion should be granted and the arbitrator's decision vacated.

Educational Policy

The Law Court has recognized that many issues both involve educational policy and affect teachers' working conditions. MSAD No. 58 v. Mt. Abram Teachers Association, 1997 ME 219 ¶ 7; City of Biddeford Board of Education v. Biddeford Teachers Association, 304 A.2d at 418 (Wernick, J., concurring in part and dissenting in part). Based a general presumption in favor of arbitration[2] and also based on the language of 26 M.R.S. § 965(1)(C),[3] the court would uphold an arbitrator's award in a close case where the balance between educational policy and working conditions appeared to be equal.

Recognizing that there is an indistinct line between educational policy and working conditions, however, the court concludes that having teachers in the classroom to receive and supervise arriving elementary school students during the 10 minutes before the school day falls distinctly into the area of educational policy under prior interpretations of the Law Court and the Maine Labor Relations Board. See City of Biddeford, 304 A.2d at 420-21 (Wernick, J., concurring) (length of a teacher's working day not subject to arbitration because it is closely and heavily interwoven with judgments bearing on the welfare of students); Windham School Committee v. Windham Educators Association, MLRB Case Nos. 87-14 and 87-15 (decision issued April 17, 1987 at 22-23) (issues involving supervision of students during school day are matters of educational policy); MSAD No. 43 Board of Directors v. MSAD No. 43

---

[2] See Westbrook School Committee v. Westbrook Teachers Association, 404 A.2d 204, 208 (Me. 1979).

[3] See Justice Wernick's opinion in City of Biddeford, 304 A.2d at 419-20.

Teachers Association, MLRB Case Nos. 79-36, 79-39, 79-45, 79-47 (decision issued March 18, 1981 at 13-14) (issues involving teacher preparation time are matters of educational policy); Peru Teachers Association v. Peru School Committee, MLRB Case No. 78-IR-01 (interpretive ruling issued July 10, 1978 at 3) (teacher supervision of students during recess and lunch periods is an issue of educational policy); Ingerson v. Millinocket School Committee, MLRB Case No. 77-39 (decision issued October 14, 1977).

In Lewiston Education Association v. Lewiston School Department, MLRB No. 08-IR-01 (interpretive ruling issued January 15, 2009 at 4-6), the MLRB declined to overrule what it described as "longstanding precedent" that teacher preparation periods and instructional time are issues of educational policy.

In this case, requiring teachers in the classroom to receive and supervise elementary school students during the short interval before the beginning of the instructional day can reasonably be categorized as an educational policy intended to have those students smoothly transition into the classroom, settle down, and be ready to begin the school day. As the arbitrator acknowledged,

> From the perspective of students and parents, the requirement that teachers be in their classrooms 10 minutes before the start of the school day might be viewed as "educational policy" because of its impact on students' readiness for the instructional day.

Arbitration Decision at 13.

The arbitrator ultimately based his decision that the requirement related more to working conditions than educational policy based on the fact that the parties had chosen to address the issue in the collective bargaining agreement. Arbitration Decision at 14. As noted above, however, the Law Court has ruled that educational policies do not become subject to arbitration by virtue of the inclusion of provisions relating to those policies in a collective bargaining agreement. MSAD No. 58 v. Mount Abram

6

Teachers Association, 1997 ME 219 ¶ 5; Board of Directors of MSAD No. 36 v. MSAD No. 36 Teachers Association, 428 A.2d at 422.

It bears emphasis that in this case requiring teachers to be in their classrooms during the 10 minutes before the beginning of the school day will not result in lengthening the teachers' workday. One of the CEA's arguments to the arbitrator was that a requirement that teachers be present in the classroom 10 minutes before the start of the class day had the effect of extending the portion of the teachers' workday devoted to instruction. See Arbitration Decision at 7.[4] While the length of the instructional day is addressed in the collective bargaining agreement, there is express language in that agreement that the length of the instructional day, along with the amount of teaching time and planning and preparation time, "are educational policy." Article 9(B).

On matters of educational policy RSU No. 5 is required to meet and consult and may be required to bargain over the impact of educational policy decisions on wages, hours, and working conditions. See Collective Bargaining Agreement, Article 27(A)(4); 26 M.R.S. § 965(1)(C).[5] RSU No. 5 cannot, however, be required to change its educational policy at the arbitrator's behest.

The entry shall be:

Petitioner's motion to vacate the December 24, 2013 arbitration decision and award in Coastal Education Association v. Regional School Unit No. 5, Board of Directors is granted. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

---

[4] RSU No. 5's position is that teachers are not expected to engage in any instruction during the 10 minute period.

[5] Article 27(A)(4) indicates that the burden is on the CEA to invoke its right to meet and consult over issues of educational policy. In this case, as far as the court can tell from the record, it did not do that. It instead filed a grievance under the contract.

7

Dated: May \_\_22\_\_2014

Thomas D. Warren
Justice, Superior Court

8

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

PETER C FELMLY ESQ
DRUMMOND WOODSUM
84 MARGINAL WAY SUITE 600
PORTLAND ME 04101

Plaintiff's Attorney

---

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

DONALD FONTAINE ESQ
LAW OFFICES OF DONALD FONTAINE
PO BOX 7590
PORTLAND ME 04112

Defendants Attorney